IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | | |
|---|---|---|
| AMBER CHAPMAN, | ) | |
| | ) | |
|    Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  2:18-cv-02842 |
| | ) | |
| OLYMBEC USA, LLC, | ) | |
| | ) | |
|    Defendant. | ) | |

**ORDER**

Plaintiff Amber Chapman brings this action for discrimination and retaliation against Defendant Olymbec USA, LLC ("Olymbec"). (ECF No. 8.) Before the Court are Olymbec's Motion to Dismiss and Motion for Judgment on the Pleadings, filed together on March 6, 2019.[1] (ECF No. 13.) Chapman responded on April 20, 2019. (ECF No. 20.) Olymbec replied on May 2, 2019. (ECF No. 21.)

For the following reasons, Olymbec's Motion for Judgment on the Pleadings and Motion to Dismiss are DENIED.

**I. Background**

The following facts are taken from Chapman's First Amended Complaint ("FAC"). (ECF No. 8.)

---

[1] Olymbec asks the Court to consider its filing as a motion to dismiss "and/or" a motion for judgment on the pleadings. (See ECF No. 13 at 43.) For reasons explained below, the Court addresses only the merits of the Motion to Dismiss.

Olymbec owns and manages a portfolio of industrial, office, retail, and residential properties throughout Canada and the United States. (ECF No. 8 at 18.)[2] Olymbec hired Chapman as a Property Manager at one of its Memphis, Tennessee properties on or about August 1, 2015. (Id.)

Chapman suffers from bipolar disorder and depression. (Id.) Medical treatment helps Chapman mitigate the adverse effects of her conditions. (Id.)

When Olymbec hired Chapman, Olymbec did not know about Chapman's conditions or perceive her as having any disabling physical or mental condition. (Id.) In early 2018, Chapman told Olymbec's agents that she suffered from bipolar disorder and depression. (Id.) Chapman asked for an accommodation based on her conditions. (Id.) Olymbec denied Chapman's request. (Id.)

Chapman asked to leave work early on February 1, 2018. (Id. at 19.) Olymbec approved Chapman's request. (Id.) Olymbec did not know that Chapman intended to file a Charge of Discrimination against Olymbec with the Equal Employment Opportunity Commission ("EEOC"). (Id.)

On February 1, 2018, Chapman left early and went to the EEOC's Memphis District Office at 1407 Union Avenue. (Id.)

---

[2] Unless otherwise noted, all pin cites for record citations are to the "PageID" page number.

Olymbec owns or manages the property at 1407 Union. (Id.) While Chapman was there to file her charge, she ran into Shirley Mason, another Olymbec employee. (Id.) Chapman told Mason that Olymbec had discriminated against her and that she was at 1407 Union to file a Charge of Discrimination against Olymbec. (Id.)

Olymbec fired Chapman on February 2, 2018. (Id.) Olymbec agent Jordana Berger told Chapman that she was being fired for breaching Berger's trust by going to the EEOC office to file a Charge of Discrimination. (Id.) Chapman protested the grounds for her termination. (Id. at 20.) She said, "You are correct . . . I went to the EEOC to file a complaint of discrimination. Under the law, I am protected [and have a right] to file a complaint with the EEOC . . . ." (Id. (brackets in original).) Berger replied, "I don't care. You are still terminated." (Id.)

Chapman filed her Complaint in this action on December 7, 2018. (ECF No. 1.) She filed her FAC on February 20, 2019. (ECF No. 8.) Olymbec filed its Answer to Chapman's original Complaint the same day. (ECF No. 10.) Olymbec's March 6, 2019 motions address Chapman's FAC. (ECF No. 13.)

Chapman brings claims against Olymbec for discrimination and retaliation under the Americans With Disabilities Act ("ADA"), 42 U.S.C. § 12101 et seq., and the Tennessee Disability Act ("TDA"), Tenn. Code Ann. §§ 8-50-103 to 104. Olymbec moves

for dismissal under Federal Rule of Civil Procedure 12(b)(6) and for judgment on the pleadings under Federal Rule of Civil Procedure 12(c). (ECF No. 13.)

## II.  Jurisdiction & Choice of Law

The Court has federal question jurisdiction. Under 28 U.S.C. § 1331, district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." Chapman asserts a right to relief against Olymbec for discrimination and retaliation in violation of the ADA. (ECF No. 8 at 21.) Those claims arise under the laws of the United States.

The Court has supplemental jurisdiction over Chapman's TDA claims. See 28 U.S.C. § 1367(a). Those claims derive from a "common nucleus of operative fact" with Chapman's federal claims against Olymbec. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966); Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576, 588 (6th Cir. 2016); see also 28 U.S.C. § 1367(a).

State substantive law applies to state-law claims brought in federal court. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Where, as here, there is no dispute that a certain state's substantive law applies, the court will not conduct a choice-of-law analysis sua sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). The parties assume in their respective motions and memoranda that Tennessee

substantive law applies to Chapman's TDA claims and ground their arguments accordingly. The Court will apply Tennessee substantive law to Chapman's state-law claims.

## III. Standard of Review

### A. Motion to Dismiss

Rule 12(b)(6) allows dismissal of a complaint that "fail[s] to state a claim upon which relief can be granted." Fed. R. Civ. P. 12(b)(6). A Rule 12(b)(6) motion permits the "defendant to test whether, as a matter of law, the plaintiff is entitled to legal relief even if everything alleged in the complaint is true." Mayer v. Mylod, 988 F.2d 635, 638 (6th Cir. 1993). A motion to dismiss tests only whether the plaintiff has pled a cognizable claim and allows the court to dismiss meritless cases that would waste judicial resources and result in unnecessary discovery. See Brown v. City of Memphis, 440 F. Supp. 2d 868, 872 (W.D. Tenn. 2006).

When evaluating a motion to dismiss for failure to state a claim, the Court must determine whether the complaint alleges "sufficient factual matter, accepted as true, to 'state a claim to relief that is plausible on its face.'" Ashcroft v. Iqbal, 556 U.S. 662, 678 (2009) (quoting Bell Atl. Corp. v. Twombly, 550 U.S. 544, 570 (2007)). If a court decides in light of its judicial experience and common sense that the claim is not plausible, the case may be dismissed at the pleading stage.

<u>Iqbal</u>, 556 U.S. at 679. The "[f]actual allegations must be enough to raise a right to relief above [a] speculative level . . . ." <u>Twombly</u>, 550 U.S. at 555.

A claim is plausible on its face if "the plaintiff pleads factual content that allows the court to draw the reasonable inference that the defendant is liable for the misconduct alleged." <u>Iqbal</u>, 556 U.S. at 678. A complaint need not contain detailed factual allegations. However, a plaintiff's "[t]hreadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice." <u>Id.</u>

**B. Motion for Judgment on the Pleadings**

Federal Rule of Civil Procedure 12(c) provides that "[a]fter the pleadings are closed -- but early enough not to delay trial -- a party may move for judgment on the pleadings." Fed. R. Civ. P. 12(c). A Rule 12(c) motion for judgment on the pleadings is reviewed under the same standard as a Rule 12(b)(6) motion to dismiss. <u>See</u> <u>Gavitt v. Born</u>, 835 F.3d 623, 639 (6th Cir. 2016); <u>Fritz v. Charter Twp. of Comstock</u>, 592 F.3d 718, 722 (6th Cir. 2010); <u>Hunter v. Ohio Veterans Home</u>, 272 F. Supp. 2d 692, 694 (N.D. Ohio 2003).

**IV. Analysis**

Olymbec moves for dismissal and judgment on the pleadings on Chapman's claims for discrimination and retaliation under the TDA and the ADA.

**A. Timeliness of Olymbec's Motions**

Chapman contends that the Court should deny Olymbec's Motion to Dismiss as untimely because Olymbec filed it after filing an Answer to her original Complaint. (ECF No. 20 at 77.) Olymbec responds that its Motion to Dismiss is timely for two independent reasons: (1) Olymbec asserted a failure-to-state-a-claim defense in its Answer; and (2) Chapman's FAC supersedes her original Complaint. (ECF No. 21 at 91.) The latter reason is sufficient. Olymbec's Motion to Dismiss is timely because Chapman filed an amended complaint to which Olymbec has not yet responded.

"The general rule is that an amended pleading supersedes the original and remains in effect, unless again modified, from that point forward." Greater Cincinnati Coal. for Homeless v. City of Cincinnati, No. C-1-08-603, 2009 WL 3029661, at *3 (S.D. Ohio Sept. 16, 2009)(quoting 6 Wright et al., Federal Practice & Procedure § 1476, at 556–57 (2nd ed. 1990 & Supp. 2001)); see Drake v. City of Detroit, 266 F. App'x 444, 448 (6th Cir. 2008)("[An] amended complaint supercedes all prior complaints . . . .")(citing Pintando v. Miami-Dade Hous. Agency, 501 F.3d 1241, 1243 (11th Cir. 2007)). "Once an amended pleading is filed, the original pleading no longer performs any function in the case." 6 Wright et al., Federal Practice & Procedure § 1476, at 556–57; see also United States v. Shofner

Iron & Steel Works, 71 F. Supp. 161, 162 (D. Or. 1947)("[An] amended complaint supersedes the original complaint [and] no motion of any kind can [] be addressed to the original complaint as it performs no function in the action . . . ."). "Any subsequent motion filed by [an] opposing party should be directed at the amended pleading." Greater Cincinnati Coal. for Homeless, 2009 WL 3029661, at *3 (citing Hartman v. Register, No. 1:06-cv-33, 2007 WL 915193 (S.D. Ohio Mar. 26, 2007)).

Chapman filed her FAC on February 20, 2019. (ECF No. 8.) Olymbec filed this Motion to Dismiss on March 6, 2019. (ECF No. 13.) Olymbec filed no pleadings in response to Chapman's FAC before filing this Motion to Dismiss. Chapman's filing of the FAC "supersedes" the original Complaint and restarts the clock on pleading procedures. See Greater Cincinnati Coal. for Homeless, 2009 WL 3029661, at *3. Because Olymbec filed its Motion to Dismiss before filing any responsive pleading directed to the FAC, the Motion to Dismiss is timely. See Fed. R. Civ. P. 12(b).

Olymbec argues alternatively that its Motion is timely because it preserved its failure-to-state-a-claim defense in its Answer. (ECF No. 21 at 91.) That argument also has merit. Only defenses listed in Rule 12(b)(2)-(5) may be waived by failing to make a motion before responding to a pleading or by failing to assert them in a responsive pleading. See Fed. R.

Civ. P. 12(h)(1). Because a Rule 12(b)(6) defense may be raised "in any pleading allowed or ordered under Rule 7(a)," "by a motion under Rule 12(c)," or "at trial," Fed. R. Civ. P. 12(h)(2)(A)-(C), a defendant does not necessarily waive its defense by responding to a complaint before making a motion to dismiss. <u>See</u> <u>Birkenbach v. Nat'l Gypsum Co.</u>, No. 13-14607, 2014 WL 2931795, at *4 (E.D. Mich. June 30, 2014)(permitting a post-answer Rule 12(b)(6) motion because defendant raised a failure-to-state-a-claim defense in its answer); <u>Stein v. Kent State Univ. Bd. of Trs.</u>, 994 F. Supp. 898, 902 (N.D. Ohio 1998), <u>aff'd</u>, 181 F.3d 103 (6th Cir. 1999)(same); <u>see also</u> <u>Arbaugh v. Y&H Corp.</u>, 546 U.S. 500, 507 (2006)(interpreting Rule 12(h)(2) to allow a failure-to-state-a-claim defense to survive up to, but not beyond, a trial on the merits); Fed. R. Civ. P. 12(h) advisory committee's note to 1966 amendment (the "defense[] of failure to state a claim upon which relief can be granted, . . . [is] expressly preserved against waiver by amended subdivision (h)(2) and (3)").

Courts will consider post-answer motions to dismiss if the defense was properly preserved in the answer. <u>See</u> Fed. R. Civ. P. 12(h)(2); <u>Cleveland Indus. Square, Inc. v. White</u>, 52 F.3d 324 (6th Cir. 1995)(affirming district court's granting a motion to dismiss filed in October 1992 after parties had answered the complaint in August 1992 raising a Rule 12(b)(6) defense);

Stein, 994 F. Supp. at 902; 5A Charles Alan Wright & Arthur R. Miller, Federal Practice and Procedure: Civil 2d § 1361 at 445-46 (West 1990)("[C]ourts have allowed untimely motions if the defense has been previously included in the answer.")(collecting cases). Olymbec's Motion to Dismiss is timely.

Neither party addresses whether Olymbec's Motion for Judgment on the Pleadings is timely. A motion for judgment on the pleadings can only be made "[a]fter the pleadings are closed . . . ." Fed. R. Civ. P. 12(c). Here, the pleadings are not closed. Olymbec can file an answer in response to Chapman's FAC. See Lucente v. Int'l Bus. Mach. Corp., 310 F.3d 243, 260 (2d Cir. 2002)("[A] court may not deprive an affected party of the right to file a response to an amended pleading if the party so desires.")(quoting 3 James Wm. Moore et al., Moore's Federal Practice § 15.17[5] (3d ed. 2002)). Because Olymbec can file a new answer, the pleadings are not closed. Olymbec's Motion for Judgment on the Pleadings is DENIED as untimely.

**B. Discrimination Claim Under the ADA**

Under the ADA,[3] a plaintiff may prove a defendant took actions that amounted to unlawful discrimination in two ways: 1) with circumstantial evidence; or 2) with direct

---

[3] The relevant provision of the ADA provides: "No covered entity shall discriminate against a qualified individual on the basis of disability in regard to job application procedures, the hiring, advancement, or discharge of employees, employee compensation, job training, and other terms, conditions, and privileges of employment." 42 U.S.C. § 12112(a).

evidence.  McMahon v. Metro. Gov't of Nashville & Davidson Cty., No. 3:13-0319, 2016 WL 323524, at *4 (M.D. Tenn. Jan. 27, 2016), report and recommendation adopted sub nom. McMahon v. Metro. Gov't of Nashville, No. 3:13-cv-00319, 2016 WL 1029518 (M.D. Tenn. Mar. 8, 2016)(citing Hedrick v. W. Reserve Care Sys., 355 F.3d 444, 452 (6th Cir. 2004), cert. denied, 543 U.S. 817 (2004)); Kline v. Tenn. Valley Auth., 128 F.3d 337, 348-49 (6th Cir. 1997).

Chapman does not claim to have direct evidence of discrimination.  (See ECF No. 20 at 80-81.)  Her discrimination claim relies on circumstantial evidence.  In a case based on circumstantial evidence, the familiar burden-shifting analysis of McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973) and Texas Department of Community Affairs v. Burdine, 450 U.S. 248 (1981) applies.  McDonnell Douglas requires a plaintiff to create an inference of discrimination by establishing a prima facie case.  McMahon, 2016 WL 323524, at *4.

Chapman can establish a prima facie case of discrimination under the circumstantial approach by showing that:  (1) she was otherwise qualified for the position, with or without reasonable accommodation; (2) she is disabled; (3) she suffered an adverse employment decision; (4) Olymbec knew or had reason to know of her disability; and (5) the position remained open while Chapman was replaced.  Ferrari v. Ford Motor Co., 826 F.3d 885, 891-92

(6th Cir. 2016)(citing <u>Monette v. Elec. Data Sys. Corp.</u>, 90 F.3d 1173, 1186 (6th Cir. 1996) <u>abrogated on other grounds by</u> <u>Lewis v. Humboldt Acquisition Corp. Inc.</u>, 681 F.3d 312, 321 (6th Cir. 2012)(en banc)). Establishing these elements is "not onerous." <u>Id.</u> at 894 (citing <u>Cline v. Catholic Diocese of Toledo</u>, 206 F.3d 651, 660 (6th Cir. 2000)).

"Although it is ultimately [Chapman's] burden [] to establish the elements of the prima facie case under <u>McDonnell Douglas</u> . . . the Supreme Court has held that <u>McDonnell Douglas</u> sets an evidentiary standard, not a pleading requirement." <u>James v. Hampton</u>, 592 F. App'x 449, 460 (6th Cir. 2015)(citing <u>Swierkiewicz v. Sorema N.A.</u>, 534 U.S. 506, 510 (2002)(holding that a plaintiff who asserts a federal employment-discrimination claim need not plead facts establishing a prima facie case to state a claim for relief)).[4] The Sixth Circuit has consistently held that <u>McDonnell Douglas</u> "does not set the standard for pleading any complaint." <u>Lindsay v. Yates</u>, 498 F.3d 434, 439-40 (6th Cir. 2007); <u>see also</u> <u>Pedreira v. Kentucky Baptist Homes for Children, Inc.</u>, 579 F.3d 722, 728 (6th Cir. 2009)(explaining that a complete analysis of a prima facie case under the <u>McDonnell Douglas</u> framework is "premature" at the motion-to-dismiss stage). As long as the plaintiff "'give[s] the

---

[4] Although there has been debate about whether <u>Swierkiewicz</u> remains good law after <u>Iqbal</u> and <u>Twombly</u>, the Sixth Circuit has held that it is. <u>See</u> <u>Keys v. Humana, Inc.</u>, 684 F.3d 605, 609 (6th Cir. 2012).

defendant fair notice of what the plaintiff's claim is and the grounds upon which it rests,'" the complaint must be upheld. Swierkiewicz, 534 U.S. at 510 (quoting Conley v. Gibson, 355 U.S. 41, 47 (1957)); see Keys v. Humana, Inc., 684 F.3d 605, 609 (6th Cir. 2012).

To withstand this Motion to Dismiss, Chapman's complaint need only provide "an adequate factual basis" for her claims to satisfy the pleading requirements of Rule 8(a)(2). See Serrano v. Cintas Corp., 699 F.3d 884, 897 (6th Cir. 2012). Although the Court need not conduct a full McDonnell Douglas burden-shifting analysis at this stage, an analysis of whether Chapman can establish a prima facie case under the framework stated above is illustrative of whether she has provided an adequate factual basis for her claims. Leniency should be afforded to the plaintiff in construing the complaint at this stage. See Serrano, 699 F.3d at 897 ("[I]t would be improper to impose 'a rigid pleading standard for discrimination cases.'")(quoting Swierkiewicz, 534 U.S. at 510).

## 1. Qualified

Under the ADA, "[t]he term 'qualified individual' means an individual who, with or without reasonable accommodation, can perform the essential functions of the employment position that such individual holds or desires." 42 U.S.C. § 12111(8).

Chapman has pled that she was "qualified for her position" and that her "condition did not prevent her from performing all essential functions of her job during employment." (ECF No. 8 at 18.) Those conclusory statements, without more, are insufficient to survive a motion to dismiss under <u>Twombly</u> and <u>Iqbal</u>. <u>See</u> <u>Iqbal</u>, 556 U.S. at 678 ("Threadbare recitals of the elements of a cause of action, supported by mere conclusory statements do not suffice.").

Chapman has also pled that she had worked for Olymbec since August 2015 and was not fired until early 2018. (<u>See</u> ECF No. at 18-19.) In denying motions to dismiss, courts have found that it may be plausibly inferred that an individual was qualified for her position based on extended periods of employment without incident. <u>See, e.g.</u>, <u>Johnson v. Bennett Auto Supply, Inc.</u>, 319 F. Supp. 3d 1278, 1285 (S.D. Fla. 2018)(finding plaintiff qualified who had "remained in the position, seemingly without incident, for three to four years"); <u>Austin v. Better Business Bureau of Middle Tenn., Inc.</u>, No. 3:10-cv-00084, 2011 WL 1042245, at *4 (M.D. Tenn. Mar. 18, 2011)("Plaintiff appears to have been otherwise qualified for her job, in that she worked at the Bureau for over three years prior to the medical leave in question . . . ."); <u>cf.</u> <u>Slattery v. Swiss Reinsurance Am. Corp.</u>, 248 F.3d 87, 92 (2d Cir. 2001), <u>as amended</u> (June 6, 2001)("[W]here discharge is at issue and the employer has

already hired the employee, the inference of minimal qualification is not difficult to draw.").

Given the deference appropriate at this motion-to-dismiss stage, Chapman's allegation that she worked for almost three years in her position allows the plausible inference that she was qualified for her position. See Serrano, 699 F.3d at 897-98.

### 2. Disabled

An individual is disabled under the ADA if she satisfies one or more of three definitional prongs.

The first has been termed the "actual disability" prong and is defined as having "a physical or mental impairment which substantially limits one or more major life activities." 42 U.S.C. § 12102(1)(A). The term "substantially limits" is "not meant to be a demanding standard" and should "be construed broadly in favor of expansive coverage[.]" 29 C.F.R. § 1630.2(j)(1)(i). Major life activities under this prong "include, but are not limited to, caring for oneself, performing manual tasks, seeing, hearing, eating, sleeping, walking, standing, lifting, bending, speaking, breathing, learning, reading, concentrating, thinking, communicating, and working." 42 U.S.C. § 12102(2)(A).

The second prong has been termed the "record of" prong and is defined as having "a record of such an impairment," referring

to the impairments listed in the "actual disability" prong above. 42 U.S.C. § 12102(1)(B). Under this prong, "record of" means "history of" an impairment. See 29 C.F.R. at § 1630.2(k)(1). Analysis under this prong "should [also] not demand extensive analysis" and the term "record of" "shall be construed broadly to the maximum extent permitted by the ADA . . . ." Id. at § 1630.2(k)(2).

The third prong has been termed the "regarded as" prong and is defined as having been "regarded as having such an impairment[,]" again referring to the impairments listed in the "actual disability" prong above. 42 U.S.C. § 12102(1)(C).

The individualized assessment of some types of impairments will, in virtually all cases, result in a determination of coverage under the "actual disability" or "record of" prongs. 29 C.F.R. § 1630.2(j)(3)(ii). Given the inherent nature of some types of impairments, they will as a factual matter, virtually always be found to impose a substantial limitation on a major life activity (e.g., blindness substantially limiting sight). See id. at § 1630.2(j)(3)(ii),(iii)(giving other examples). "Therefore, with respect to these types of impairments, the necessary individualized assessment should be particularly simple and straightforward." Id. at § 1630.2(j)(3)(ii).

Chapman makes two arguments that she has sufficiently pled her disability under at least one of the three prongs. First,

she argues she has pled that she suffered discrimination and termination "because of her actual or perceived disability." (ECF No. 20 at 80-81.) Second, she relies on an Exhibit to Olymbec's Motion to Dismiss, an email from Chapman to Olymbec employee Jordana Berger detailing and informing Olymbec of Chapman's disability. (ECF No. 13-2 at 60.) Chapman argues that this Exhibit demonstrates Chapman's record of impairment and how it has affected her life. (See ECF No. 20 at 81.) Chapman's second argument is sufficient.

On a motion to dismiss, a court's analysis must be confined to "the four corners of the complaint." See Parsons v. U.S. Dep't of Justice, 801 F.3d 701, 706 (6th Cir. 2015). However, documents that a defendant attaches to a motion to dismiss are considered part of the pleadings if they are referred to in a plaintiff's complaint and are central to her claim. See Luis v. Zhang, 833 F.3d 619, 626 (6th Cir. 2016); Rondigo, L.L.C. v. Twp. of Richmond, 641 F.3d 673, 680-81 (6th Cir. 2011); Fed. R. Civ. P. 10(c)("A copy of any written instrument which is an exhibit to a pleading is a part thereof for all purposes."). Although defendants rely on these attachments to support a motion to dismiss, nothing prevents a court from considering the attachments in analyzing the plausibility of a plaintiff's claim. Chapman, in her FAC, refers to the email communication that Olymbec attached to its Motion to Dismiss. (See ECF No. 8

at 18)("In early 2018, Plaintiff informed Defendant's agents that she was afflicted with bipolar disorder and depression.") Chapman now relies on Olymbec's attachment to establish a central element of her claim:  proof of her disability.  (See ECF No. 20 at 81.)  Olymbec's Exhibit is part of the pleadings for purposes of analyzing its Motion to Dismiss.

In Olymbec's Exhibit, Chapman states that she "live[s] with and battle[s] severe depression"; has been medically diagnosed as bipolar and has been on medication for it for many years; sees a doctor for her disability every three months; and recently her medicine is not working as it should.  (See ECF No. 13-2 at 60.)  Chapman also says that sometimes she may seem "unhappy" or "upset" at work and that she has "worked extremely hard to not let it affect my work or life[, b]ut sometimes it's impossible for it to not affect things."  (Id.)

These statements and facts, and the reasonable inferences to be drawn from them, taken as true, are sufficient to satisfy the ADA and the TDA's definition of disability.  This analysis is "particularly simple and straightforward." 29 C.F.R. § 1630.2(j)(3)(ii).  As "construed broadly," one may plausibly infer from these statements that Chapman has a mental disability and that it "substantially limits" major aspects of her life. See id. at § 1630.2(j)(1)(i); § 1630.2(j)(3)(iii)("[I]t should easily be concluded that the following types of impairments

will, at a minimum, substantially limit the major life activities indicated [in 42 U.S.C. § 12102(2)(A)]: . . . major depressive disorder, bipolar disorder, . . . [as they] substantially limit brain function.")(emphasis added); 29 C.F.R. § 1630.2(k)(1); see also Sutton v. United Air Lines, Inc., 527 U.S. 471, 482 (1999)("[I]it is apparent that if a person is taking measures to correct for, or mitigate, a physical or mental impairment, the effects of those measures—both positive and negative—must be taken into account when judging whether that person is 'substantially limited' in a major life activity and thus 'disabled' under the Act."), overturned on other grounds due to legislative action (2009); Gilday v. Mecosta Cty., 124 F.3d 760, 767 (6th Cir. 1997)("[I]t may well be in some instances that the controlling medication (or other mitigating measure) will itself impose a substantial limitation on an individual's major life activities."); Smith v. Rosenthal Collins Grp., LLC, 340 F. Supp. 2d 860, 862 (W.D. Tenn. 2004)(denying a motion to dismiss when plaintiff could plausibly meet the disability requirement due to effects of his medication for bipolar disorder).

Chapman has sufficiently pled facts that could establish the disability element of her prima facie discrimination claim.

### 3. Adverse Employment Decision

Chapman has pled that she was terminated by Olymbec. (ECF No. 8 at 19.) Olymbec concedes that it terminated Chapman. (ECF No. 13-1 at 46.) It is undisputed that termination is an adverse employment decision. Choate v. Advance Stores Co., Inc., 169 F. Supp. 3d 724, 730 (M.D. Tenn. 2015), aff'd, 656 F. App'x 88 (6th Cir. 2016)("[N]either party disputes that Plaintiff's termination would constitute an 'adverse employment decision' as defined by the ADA."); Litzinger v. Allegheny Lutheran Soc. Ministries, No. 3:15-CV-306, 2017 WL 3089022, at *5 (W.D. Pa. July 20, 2017). Chapman satisfies this element.

### 4. Knowledge of Disability

Olymbec concedes that it knew of Chapman's disability prior to her termination. (ECF No. 13-1 at 56-57.) Chapman has pled that "[i]n early 2018, Plaintiff informed Defendant's agents that she was afflicted with bipolar disorder and depression." (ECF No. 8 at 18.) The email from Chapman to Berger, which Olymbec attached to its Motion to Dismiss as an Exhibit, supports that allegation. (See ECF No. 13-2 at 60.) The email was sent before Chapman was fired, it explicitly states that Chapman is disabled and details her disability, and it was sent to the person directly responsible for Chapman's termination, Berger. (See id.) Olymbec's knowledge of Chapman's disability is established.

### 5. Position Stayed Open

Chapman has not pled any facts that indicate Olymbec kept her position open after her termination. That deficiency is not dispositive at this stage. The satisfaction of every element of a prima facie case at the motion-to-dismiss stage is not required. See Keys, 684 F.3d at 610 (reversing district court that dismissed claims of discrimination because the district court found that the plaintiff failed to establish one element of a prima facie case); James, 592 F. App'x at 460 ("[I]t was improper for the district court to dismiss [the plaintiff's] claim on the ground that she had failed to plead a prima facie case under McDonnell Douglas."). "To withstand a motion to dismiss, [a] complaint need only provide 'an adequate factual basis' for a discrimination claim in order to satisfy the pleading requirements of Federal Rule of Civil Procedure 8(a)(2)." James, 592 F. App'x at 460–61 (quoting Serrano, 699 F.3d at 897). Although Chapman has not alleged facts that could prove that her position remained open, she has alleged sufficient facts "to state a claim to relief that is plausible on its face." Twombly, 550 U.S. at 570.

Because Chapman has pled sufficient facts to establish a plausible claim of discrimination under the ADA, Olymbec's Motion to Dismiss Chapman's discrimination claim is DENIED.

**C. Discrimination Claim Under the TDA**

Both federal and state courts have held that discrimination claims under the ADA and the TDA require the same analysis.  See Cardenas-Meade v. Pfizer, Inc., 510 F. App'x 367, 370 (6th Cir. 2013); Nance v. Goodyear Tire & Rubber Co., 527 F.3d 539, 553 n.5 (6th Cir. 2008)("Both federal and Tennessee disability discrimination actions require the same analysis.")(citation omitted); Cantrell v. Yates Servs., LLC, 205 F. Supp. 3d 928, 934 (M.D. Tenn. 2016); Sasser v. Quebecor Printing (USA) Corp., 159 S.W.3d 579, 584 (Tenn. Ct. App. 2004)("A [discrimination] claim brought under the [TDA] is analyzed under the same principles as those utilized for the [ADA].").  When those cases were decided, however, there was a conflict in the Sixth Circuit about the proper test for establishing a prima facie case of discrimination under the ADA.  See Ferrari, 826 F.3d at 893-95 (discussing conflict); Whitfield v. Tennessee, 639 F.3d 253, 258-59 (6th Cir. 2011)(same).  The five-part test stated in Monette, 90 F.3d at 1186[5] conflicted with the three-part test stated in Mahon v. Crowell, 295 F.3d 585, 589 (6th Cir.

---

[5] "If the plaintiff seeks to establish [a handicap discrimination] case indirectly, without direct proof of discrimination, the plaintiff may establish a prima facie case of discrimination by showing that: 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced."  Monette, 90 F.3d at 1186.

2002)(citing Monette, 90 F.3d at 1178).[6]  Ferrari confirmed the five-part test for ADA discrimination claims.  826 F.3d at 895; see supra, at 11-12.

The Tennessee Supreme Court has adopted the three-part test for TDA claims.  See Barnes v. Goodyear Tire & Rubber Co., 48 S.W.3d 698, 705 (Tenn. 2000), abrogated on other grounds by Gossett v. Tractor Supply Co., 320 S.W.3d 777 (Tenn. 2010).  The Tennessee Supreme Court has not revisited this issue since Ferrari.  For purposes of its analysis, the Court will assume that disability claims under the ADA and the TDA are no longer analyzed using the same principles and will apply the three-part test adopted in Barnes to Chapman's TDA claim.  Even assuming the tests differ, the result is the same.  Chapman has pled sufficient facts to satisfy both tests.

There are three traditional elements to a claim of discrimination under the TDA:[7]  "(1) that the individual was qualified for the position; (2) that the individual was disabled; and (3) that the individual suffered an adverse

---

[6] "To make out a prima facie employment discrimination case under [the ADA], a plaintiff must show (1) that she or he is an individual with a disability, (2) who was otherwise qualified to perform a job's requirements, with or without reasonable accommodation, and (3) who was discriminated against solely because of the disability."  Mahon, 295 F.3d at 589.

[7] The relevant provision of the TDA provides:  "There shall be no discrimination in the hiring, firing and other terms and conditions of employment . . . of any private employer, against any applicant for employment based solely upon any physical, mental or visual disability of the applicant, unless such disability to some degree prevents the applicant from performing the duties required by the employment sought or impairs the performance of the work involved."  Tenn. Code Ann. § 8-50-103.

employment action because of that disability." <u>Barnes</u>, 48
S.W.3d at 705, <u>abrogated on other grounds by</u> <u>Gossett</u>, 320 S.W.3d
777. The third element, the causation element, may be
established by direct or indirect evidence of discrimination.
<u>Id.</u> at 710. The threshold issue is whether the claimant is
"disabled." <u>Barnes</u>, 48 S.W.3d at 709–10; <u>Cecil v. Gibson</u>, 820
S.W.2d 361, 365 (Tenn. Ct. App. 1991).

As established above, Chapman has sufficiently pled that
she was qualified for the position and that she was disabled
(the TDA's definition of disability is the same as the ADA's).
<u>Compare</u> Tenn. Code Ann. § 4-21-102(3)(A) <u>with</u> 42 U.S.C.
§ 12102(1)(A). Chapman's allegation that Berger told her she
was being fired "for breaching her trust by going to the EEOC
Office at 1407 Union to file a Charge of Discrimination" is
sufficient to satisfy the causal connection element. (ECF No.
20 at 79.) "But for" Chapman's alleged disability, she would
not have gone to the EEOC to file a disability discrimination
charge. <u>Cf.</u> <u>Demyanovich v. Cadon Plating & Coatings, L.L.C.</u>,
747 F.3d 419, 433 (6th Cir. 2014)(finding that plaintiff's
disability was a "but for" cause of termination because the
plaintiff would not have been terminated had he not asked about
taking leave to treat his medical conditions). The alleged
interval between Chapman's informing Olymbec of her disability
(January 29, 2018) and her termination (February 2, 2018) is

also sufficient to satisfy the causal connection element at this stage. See infra, at 30-31.

Because Chapman has pled sufficient facts to establish a plausible claim of discrimination under the TDA, Olymbec's Motion to Dismiss Chapman's discrimination claim is DENIED.

**D. ADA and TDA Retaliation Claims**

Like an ADA discrimination claim, a plaintiff can establish an ADA retaliation claim in two ways:[8] (1) by putting forth direct evidence that the defendant had a discriminatory motive in carrying out its retaliatory employment decision, see Smith v. Chrysler Corp., 155 F.3d 799, 805 (6th Cir. 1998)(stating that direct evidence of discrimination would be "an employer telling an employee, 'I fired you because you are disabled.'"); or (2) by presenting circumstantial evidence under the McDonnell Douglas burden-shifting framework, see Ford Motor Co., 782 F.3d at 767; Rorrer v. City of Stow, 743 F.3d 1025, 1046 (6th Cir. 2014).

Because Chapman does not claim to have direct evidence of retaliation, (see ECF No. 20 at 79)(citing only the legal requirements to prove a circumstantial case of retaliation), the

---

[8] The relevant ADA provision provides: "No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter." 42 U.S.C. § 12203(a). "Discrimination here means retaliation." E.E.O.C. v. Ford Motor Co., 782 F.3d 753, 767 (6th Cir. 2015)(en banc).

Court analyzes her ADA retaliation claim using the McDonnell Douglas burden-shifting circumstantial evidence approach. Rorrer, 743 F.3d at 1046 ("Plaintiffs do not present any direct evidence of retaliation, so their retaliation claim falls under the McDonnell Douglas burden-shifting approach.")(citing A.C. ex rel. J.C. v. Shelby Cty. Bd. of Educ., 711 F.3d 687, 697 (6th Cir. 2013)).

Under the McDonnell Douglas framework, a plaintiff "must first establish, by a preponderance of the evidence, [her] 'prima facie' case." Ford Motor Co., 782 F.3d at 767. To state a prima facie claim of retaliation under the circumstantial evidence theory, Chapman must have satisfactorily pled that: (1) she engaged in protected activity; (2) Olymbec knew of that activity; (3) Olymbec took an adverse action against Chapman; and (4) there was a causal connection between the protected activity and the adverse action.[9] See Rorrer, 743 F.3d at 1046; Shelby Cty. Bd. of Educ., 711 F.3d at 697. "Establishing a prima facie case of retaliation is a 'low hurdle.'" Rorrer, 743 F.3d at 1046 (citing Gribcheck v. Runyon, 245 F.3d 547, 551 (6th Cir. 2001)).

Although the parties have not cited, and the Court has not found, any language in the TDA that affords a cause of action

---

[9] For the reasons stated above, the Court need not conduct a full McDonnell Douglas burden-shifting analysis at this stage in the proceedings. See supra, at 12-13.

for retaliation, federal courts have treated the TDA and ADA as having identical retaliation causes of action. See, e.g., Cardenas-Meade, 510 F. App'x at 372-73 (treating the ADA and the TDA as having the same retaliation standard without citing authority for a retaliation cause of action under the TDA); Wheeler v. Jackson Nat'l Life Ins. Co., 159 F. Supp. 3d 828, 857-58 (M.D. Tenn. 2016)(same). Because Olymbec does not contest that the TDA provides a cause of action for retaliation, the Court will assume that it does and that this action is governed by the ADA's retaliation standard. See Sasser, 159 S.W.3d at 584 ("A claim brought under the [TDA] is analyzed under the same principles as those utilized for the [ADA]."); see also Barnes, 48 S.W.3d at 705 ("We, therefore, may look to federal law for guidance in enforcing our own anti-discrimination laws.").

### 1. Protected Activity and Adverse Action

Olymbec concedes that Chapman has sufficiently pled the first and third elements of a prima facie retaliation claim (i.e., protected activity and adverse action). (See ECF No. 13-1 at 55-58); Rorrer, 743 F.3d at 1046. Although Olymbec contends that requesting an accommodation of understanding and patience (which Chapman raised for the first time in her response brief) is not protected activity under the ADA or TDA, Olymbec concedes that Chapman has alleged another protected

activity: filing a Charge of Discrimination. (See ECF No. 21 at 92-93.) It is undisputed that Olymbec terminated Chapman and that termination is an adverse employment action. Carlson v. Leprino Foods Co., 522 F. Supp. 2d 883, 888 (W.D. Mich. 2007)("[T]ermination satisfies the adverse-employment-action element of the prima facie case.").

## 2. **Knowledge of Protected Activity**

Olymbec contends that Chapman has not sufficiently pled the second element of an ADA retaliation claim: that Olymbec knew of Chapman's protected activity. (See ECF No. 13-1 at 55-56.) Olymbec makes two arguments. (Id.) First, it contends that it did not in fact know that Chapman had filed a charge with the EEOC until after it fired her. (Id.) That argument is not well-taken. It challenges the truthfulness of Chapman's allegations. At the motion-to-dismiss stage, the Court must accept all well-pled allegations as true. Twombly, 550 U.S. at 572. Second, Olymbec contends that Chapman has not alleged sufficient facts to plausibly state that Olymbec knew of Chapman's protected activity. (Id. at 55.) That argument is also not well-taken.

Chapman cites two allegations in her FAC that sufficiently plead Olymbec's knowledge: (1) that she was fired the day after she told fellow-Olymbec employee Mason about going to 1407 Union Avenue to file a Charge of Discrimination; and (2) that Berger

told her that she was being fired "for breaching her trust by going to the EEOC Office at 1407 Union to file a Charge of Discrimination." (ECF No. 20 at 79.)

Chapman's second allegation is sufficient. If Berger told Chapman that she was being fired for "going to the EEOC Office at 1407 Union to file a Charge of Discrimination," Berger would have known about Chapman's protected activity before firing her. Chapman plausibly alleges the knowledge element of her retaliation claim.

### 3. Causal Connection

Olymbec makes two arguments that Chapman has not sufficiently pled the fourth element of her ADA retaliation claim: that there was a causal connection between Chapman's protected activity and her firing. (See ECF No. 13-1 at 55-58). First, Olymbec contends that it fired Chapman because she lied about why she had to leave work early on February 1, 2018. Olymbec alleges that Chapman said she had to pick up her kids. (Id. at 55-56.) That argument is not well-taken because it does not address a deficiency in the pleadings. Second, Olymbec contends that Chapman has not alleged sufficient facts to plausibly show a causal connection between her protected activity and her firing. (See id. at 55.)

Chapman cites two allegations in her FAC that establish the requisite causal connection: (1) the temporal proximity between

her protected activity and her termination; and (2) Berger's statement to her that she was being fired "for breaching her trust by going to the EEOC Office at 1407 Union to file a Charge of Discrimination." (ECF No. 20 at 79.)

The alleged interval between Chapman's protected activity and her termination is sufficient to satisfy the causal connection element. In the FAC, Chapman alleges that Olymbec learned of Chapman's protected activity the day before or the day of Chapman's termination. "Where an adverse employment action occurs very close in time after an employer learns of a protected activity, such temporal proximity between the events is significant enough to constitute evidence of a causal connection for the purposes of satisfying a prima facie case of retaliation." Mickey v. Zeidler Tool & Die Co., 516 F.3d 516, 525 (6th Cir. 2008). A one-day or same-day interval, without more, is enough. See Rogers v. Henry Hord Health Sys., 897 F.3d 763, 776 (6th Cir. 2018)(finding nine weeks between protected activity and adverse action "sufficient temporal proximity to establish a causal connection"); Mickey, 516 F.3d at 525 ("In those limited number of cases . . . where an employer fires an employee immediately after learning of a protected activity, we can infer a causal connection between the two actions, even if [the plaintiff] had not presented other evidence of retaliation."); Seeger v. Cincinnati Bell Tel. Co., LLC, 681

F.3d 274, 283–84 (6th Cir. 2012)(collecting cases holding that a two- to three-month time lapse between a plaintiff's protected activity and occurrence of a materially adverse action is sufficient temporal proximity to satisfy a plaintiff's prima facie case of retaliation); Nguyen v. City of Cleveland, 229 F.3d 559, 566–67 (6th Cir. 2000)(noting that "cases that have permitted a prima facie case to be made based on the proximity of time have all been short periods of time, usually less than six months")(internal quotation marks omitted).

Because Chapman has pled sufficient facts to establish a plausible case of retaliatory discrimination under the ADA and the TDA, Olymbec's Motion to Dismiss the retaliation claims is DENIED.

### V. Conclusion

For the foregoing reasons, Olymbec's Motion for Judgment on the Pleadings and Motion to Dismiss are DENIED.


So ordered this 1st day of November, 2019.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE