**IN THE UNITED STATES DISTRICT COURT
FOR THE WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION**

---

| | | |
|---|---|---|
| AMBER CHAPMAN, | ) | |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | No.  2:18-cv-02842 |
| | ) | |
| OLYMBEC USA, LLC, | ) | |
| | ) | |
| Defendant. | ) | |

---

**ORDER**

---

Plaintiff Amber Chapman brings this action for disability discrimination and retaliation against Defendant Olymbec USA, LLC ("Olymbec"). (ECF No. 8.) Before the Court is Olymbec's Motion for Partial Summary Judgment, filed on December 20, 2019.[1] (ECF No. 31.) Chapman responded on January 24, 2020. (ECF No. 36.) Olymbec replied on February 7, 2020. (ECF No. 40.)

For the following reasons, Olymbec's Motion is DENIED in part and GRANTED in part.

**I.   Background**

Olymbec is a property management company that owns and manages a portfolio of industrial, office, retail, and residential properties. (ECF No. 29 ¶ 6.) In August 2016,

---

[1] Olymbec styles its motion as a "Motion for Summary Judgment," (ECF No. 32), but in application it is a motion for partial summary judgment.

Olymbec hired Chapman to work as a dispatch coordinator. (ECF No. 41 ¶ 1.) In July 2017, Chapman was promoted to administrative assistant. (Id. ¶ 3.) On the afternoon of January 29, 2018, Chapman had a disciplinary meeting with Olymbec's general manager, Jordana Berger, and Chapman's direct supervisor, Jenny Cupp. (Id. ¶ 4.) Later that night, Chapman sent Berger an email titled "A Piece to the Puzzle", which said:

> After much thought and consideration, I feel that for you to completely understand a few pieces to the puzzle, I have to disclose a very personal matter to you. I live with and battle severe depression. I have what my doctor has diagnosed as biopolar. I am on medication, and have been for many years. Which is why I go to the doctor every 3 months, sometimes a month after an appointment if medicine is modified.

> Recently, my medicine was changed entirely due to the skyrocketing insurance prices. Changing medication after years of being on the same medication can cause mood changes and behaviors. The medicine I was recently put on is not working like it should. In fact, this past Friday my doctor increased my dosage for my depression and gave me anxiety medication.

> I am disclosing this information to you to help you understand that while I may seem "upset" or "unhappy" at times, in reality, I am just trying to make the best out of the mental illness that plagues me.

> Mental illness is not an easy subject to discuss. Nor is it really anyone's business. But I have accepted my disability and I have worked extremely hard to not let it affect my work or life. But sometimes it's impossible for it to not affect things.

> I do not want your sympathy, nor do I want to discuss this further than this email. I just felt that you needed to know so that you can have some understanding to the times that I am "unhappy" or "upset."

(ECF No. 38-2) (transcribed without alteration).  On January 30, 2018, Chapman met again with Berger.  (ECF No. 41 ¶ 10.)  Later that morning, Berger issued a formal written reprimand to Chapman for alleged acts of insubordination that had occurred on January 15, 2018, January 22, 2018, and January 29, 2018.  (Id. ¶¶ 12, 13; see also No. 38-3.)

On February 1, 2018, Chapman requested, and was approved by Berger, to leave work early.  (ECF No. 41 ¶¶ 16, 18.)  The parties dispute the justification for Chapman's request to leave early.  Chapman contends that she asked to leave to pick up her kids and run some "personal errands."  (Id. ¶ 16.)  Olymbec contends that Chapman asked to leave because "there was a medical emergency concerning [Chapman's] father-in-law and no one was available to pick her children up from the school bus at 2:45 p.m."  (Id.)

Chapman left work around 2:15 p.m. and went to Memphis's Equal Employment Opportunity Commission office, located at 1407 Union Avenue, to file a complaint about discriminatory treatment against Olymbec.  (Id. ¶¶ 20, 21, 25; No. 39-2 at 198:19-20.)  Olymbec owns and manages the building at 1407 Union Avenue.  (ECF No. 41 ¶ 22.)  While there, Chapman ran into co-worker Shirley Mason.  (Id. ¶ 23.)  After talking with Chapman, Mason sent an email to Berger at 4:14 p.m., in which Mason said her conversation with Chapman "left [Mason] with the impression

[Chapman] was visiting the EEOC which is on the 9th floor." (Id. ¶¶ 26-27; see also No. 38-4.)

The next day, February 2, 2018, Olymbec, through Berger, terminated Chapman. (ECF No. 41 ¶¶ 29, 30.) The parties dispute the reason for Chapman's termination. Chapman contends that Berger's exact words were: "You breached my trust for going to the EEOC at 1407 Union and for filing a discrimination charge." (Id. ¶ 32.) Olymbec contends that Berger terminated Chapman for being dishonest and breaching Berger's trust. (Id. ¶ 28.)

On December 7, 2018, Chapman brought claims against Olymbec for disability discrimination and retaliation under the Americans With Disabilities Act ("ADA"), 42 U.S.C. §§ 12101, et seq., and the Tennessee Disability Act ("TDA"), Tenn. Code Ann. §§ 8-50-103 to 104. (ECF No. 1.) Chapman filed her First Amended Complaint ("FAC") on February 20, 2019. (ECF No. 8.) Olymbec filed its Answer to Chapman's FAC on November 12, 2019. (ECF No. 29.) On December 20, 2019, Olymbec moved for partial summary judgment. (ECF No. 31.)

## II. Jurisdiction & Choice of Law

The Court has federal question jurisdiction. Under 28 U.S.C. § 1331, district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." Chapman asserts a right to

4

relief against Olymbec for disability discrimination and retaliation in violation of the ADA. (ECF No. 8 at 21.) Those claims arise under the laws of the United States.

The Court has supplemental jurisdiction over Chapman's TDA claims. See 28 U.S.C. § 1367(a). Those claims derive from a "common nucleus of operative fact" with Chapman's federal claims against Olymbec. See United Mine Workers of Am. v. Gibbs, 383 U.S. 715, 725 (1966); Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576, 588 (6th Cir. 2016); see also 28 U.S.C. § 1367(a).

State substantive law applies to state-law claims brought in federal court. See Erie R.R. Co. v. Tompkins, 304 U.S. 64 (1938). Where, as here, there is no dispute that a certain state's substantive law applies, the court will not conduct a choice-of-law analysis sua sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). The parties assume in their respective motions and memoranda that Tennessee substantive law applies to Chapman's TDA claims and ground their arguments accordingly. (ECF No. 32 at 4; No. 36 at 6-7.) The Court will apply Tennessee substantive law to Chapman's state-law claims.

## III. Standard of Review

Under Federal Rule of Civil Procedure 56, a court must grant a party's motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the

movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party must show that the nonmoving party, having had sufficient opportunity for discovery, lacks evidence to support an essential element of her case. See Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A 'genuine' dispute exists when the plaintiff presents 'significant probative evidence' 'on which a reasonable jury could return a verdict for her.'" EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (quoting Chappell v. City of Cleveland, 585 F.3d 901, 913 (6th Cir. 2009)). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Lossia v. Flagstar Bancorp, Inc., 895 F.3d 423, 428 (6th Cir. 2018) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

Although summary judgment must be used carefully, it "is an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action[,] rather than a disfavored procedural shortcut." FDIC v. Jeff Miller Stables, 573 F.3d

289, 294 (6th Cir. 2009)(quotation marks and citations omitted).

## IV. Analysis

Olymbec asks the Court to decide as a matter of law that: (1) Chapman does not have viable causes of action for her TDA discrimination and retaliation claims; (2) Chapman is not entitled to compensatory damages, punitive damages, or a jury trial for her ADA retaliation claim; and (3) Chapman's compensatory and punitive damages for her ADA discrimination claim are statutorily capped at $50,000. (ECF No. 32 at 1-2.)

### A. TDA Causes of Action

The TDA prohibits private employers from discriminating against employees, including firing, "based solely upon any physical, mental or visual disability of the applicant . . . ." Tenn. Code Ann. § 8-50-103(b). Tennessee law also prohibits "[r]etaliat[ing] or discriminat[ing] . . . against a person because such person has opposed a practice declared discriminatory . . . or because such person has made a charge, filed a complaint, testified, assisted or participated in any manner in any investigation, proceeding or hearing . . . ." Tenn. Code Ann. § 4-21-301(a)(1).[2]

---

[2] Tennessee Code Annotated § 4-21-301(a)(1) is part of the Tennessee Human Rights Act ("THRA"). The TDA incorporates the definitions and remedies provided by the THRA. See Barnes v. Goodyear Tire & Rubber Co., 48 S.W.3d 698, 705 (Tenn. 2000)(citing Forbes v. Wilson Cty. Emergency, 966 S.W.2d 417, 420 (Tenn. 1998)), abrogated on other

Olymbec argues that "Chapman's TDA claims must be dismissed . . ." because "[t]he TDA does not require employers to provide otherwise qualified employees a reasonable accommodation." (ECF No. 32 at 4.) Olymbec's argument is premised on its contention that Chapman's TDA disability discrimination and retaliation claims necessarily depend on proving a "reasonable accommodation" element. (See id.) They do not.

The TDA does not require employers to provide otherwise qualified employees a reasonable accommodation. Bennett v. Nissan N. Am., Inc., 315 S.W.3d 832, 841–42 (Tenn. Ct. App. 2009) ("In fact, the TDA elements are very similar to those of the ADA, but do not include a 'reasonable accommodation' component.") (citing Roberson v. Cendant Travel Servs., Inc., 252 F. Supp. 2d 573, 583 (M.D. Tenn. 2002)); see also Cardenas-Meade v. Pfizer, Inc., 510 F. App'x 367, 369 n.3 (6th Cir. 2013). Chapman does not allege failure to accommodate. Her disability discrimination claim requires her to prove: "(1) that [she] was qualified for the position; (2) that [she] was disabled; and (3) that [she] suffered an adverse employment action because of that disability." Bennett, 315 S.W.3d at 841

---

grounds by Gossett v. Tractor Supply Co., 320 S.W.3d 777 (Tenn. 2010). The statutory basis for TDA retaliation causes of action is through the THRA. See Baker v. Windsor Republic Doors, 414 F. App'x 764, 779 (6th Cir. 2011) (citing Tenn. Code Ann. § 8-50-103(b)(2)).

(citing Barnes v. Goodyear Tire & Rubber Co., 48 S.W.3d 698, 705 (Tenn. 2000), abrogated on other grounds by Gossett v. Tractor Supply Co., 320 S.W.3d 777 (Tenn. 2010)). Chapman's retaliation claim requires her to prove: "(1) that [she] engaged in an activity protected by [Tennessee law]; (2) that the exercise of [her] . . . rights was known by [Olymbec]; (3) that, thereafter, [Olymbec] took an employment action adverse to [her]; and (4) that there was a causal connection between the protected activity and the adverse employment action." Cardenas-Meade, 510 F. App'x at 372. Because Chapman brings claims that do not require a "reasonable accommodation" element, (see ECF No. 36 at 7), Olymbec's argument that her TDA claims must be dismissed because "the TDA does not require employers to provide otherwise qualified employees a reasonable accommodation" is not germane.[3]

In its reply, Olymbec argues that Chapman's TDA claims should be dismissed because Chapman has relied on allegations and has not cited any facts in the record. (ECF No. 40 at 2.) That argument is unpersuasive because Olymbec has not carried its initial burden of proving that it is "entitled to judgment as a matter of law" by showing that "there is no genuine dispute

---

[3] Because requesting a reasonable accommodation is a protected activity, it is possible for a federal disability retaliation claim to have a "reasonable accommodation" element (e.g., when an employee is terminated because she requested a reasonable accommodation). See Burress v. City of Franklin, 809 F. Supp. 2d 795, 815 (M.D. Tenn. 2011) (citing Baker, 414 F. App'x at 776–77 & n.8). That is not the case here.

as to any material fact." Fed. R. Civ. P. 56(a); <u>Fantroy v.</u>
<u>Vann</u>, 2015 WL 5244342, at *4 (E.D. Mich. Sept. 8, 2015) ("As the
moving parties, the Defendants have the initial burden to show
that there is an absence of evidence to support [Plaintiff's]
case.") (citing <u>Selhv v. Caruso</u>, 734 F.3d 554 (6th Cir. 2013)).
Olymbec argues only that "[it] was not required to provide
Chapman with a reasonable accommodation under Tennessee
law . . . ." (ECF No. 32 at 4; <u>see also</u> No. 40 at 1-2.)
Whether Olymbec failed to accommodate Chapman's disability is
not an element of her disability discrimination or retaliation
claims. Olymbec has not shown that there is no significant
probative evidence to support the elements of Chapman's TDA
claims. Olymbec's Motion for Partial Summary Judgment on
Chapman's TDA claims is DENIED.

### B. Right to a Jury Trial, Compensatory Damages, and Punitive Damages for Chapman's ADA Retaliation Claim

Olymbec contends that, as a matter of law, Chapman is not
entitled to compensatory damages, punitive damages, or a jury
trial for her ADA retaliation claim. (ECF No. 32 at 5-8; No. 40
at 2-3.) Chapman responds that the relevant case law supports
those remedies. (ECF No. 36 at 8-9.) She argues that, as a
practical matter, she is entitled to a jury trial on her TDA
claims and her ADA discrimination claim and that the remedies
for those claims include compensatory and punitive damages.

(Id. at 9.)   She argues that bifurcating her ADA retaliation claim from her other claims would be an inefficient use of judicial resources.   (Id.)

Several statutes are at issue.   See U.S. Dep't of Treasury v. Fabe, 508 U.S. 491, 500 (1993)("'The starting point in a case involving construction of [an Act], like the starting point in any case involving the meaning of a statute, is the language of the statute itself.'") (quoting Grp. Life & Health Ins. Co. v. Royal Drug Co., 440 U.S. 205, 210 (1979)).   The anti-retaliation provision of the ADA provides:

> **(a) Retaliation.**   No person shall discriminate against any individual because such individual has opposed any act or practice made unlawful by this chapter or because such individual made a charge, testified, assisted, or participated in any manner in an investigation, proceeding, or hearing under this chapter.
>
>    . . . .
>
> **(c) Remedies and procedures**.   The remedies and procedures available under sections 12117, 12133, and 12188 of this title shall be available to aggrieved persons for violations of subsections (a) and (b), with respect to subchapter I, subchapter II and subchapter III, respectively.

42 U.S.C. § 12203(a) & (c).   Section 12117(a), referenced in § 12203(c), cross-references and provides that available remedies include those in Title VII of the Civil Rights Act of 1964, 42 U.S.C. §§ 2000e-4, et seq. ("Title VII").   Section 2000e-5(g)(1) of Title VII provides that a court may order certain "equitable relief as the court deems appropriate," but

it does not allow a court to order compensatory or punitive damages. 42 U.S.C. § 2000e-5. In 1991, however, Title VII was amended to expand the remedies available under § 2000e-5(g)(1) to allow compensatory and punitive damages for claims brought under specific, referenced provisions. See 42 U.S.C. § 1981a(a)(2). Two of the relevant, referenced provisions are: (1) "section 102 of the [ADA] (42 U.S.C. § 12112)" (i.e., ADA intentional discrimination claims); and (2) "section 102(b)(5) of the [ADA]" (i.e., ADA failure-to-accommodate claims). Id.[4] The ADA's anti-retaliation provision, 42 U.S.C. § 12203, is not explicitly referenced in 42 U.S.C. § 1981a(a)(2).

The majority interpretation is that Congress's decision not to refer specifically to the ADA's retaliation provision

---

[4] The full text of 42 U.S.C. § 1981a(a)(2) provides:

In an action brought by a complaining party under the powers, remedies, and procedures set forth in section 706 or 717 of the Civil Rights Act of 1964 (as provided in section 107(a) of the Americans with Disabilities Act of 1990 (42 U.S.C. 12117(a)), and section 794a(a)(1) of Title 29, respectively) against a respondent who engaged in unlawful intentional discrimination (not an employment practice that is unlawful because of its disparate impact) under section 791 of Title 29 and the regulations implementing section 791 of Title 29, or who violated the requirements of section 791 of Title 29 or the regulations implementing section 791 of Title 29 concerning the provision of a reasonable accommodation, or section 102 of the Americans with Disabilities Act of 1990 (42 U.S.C. 12112), or committed a violation of section 102(b)(5) of the Act, against an individual, the complaining party may recover compensatory and punitive damages as allowed in subsection (b), in addition to any relief authorized by section 706(g) of the Civil Rights Act of 1964, from the respondent.

(§ 12203) in § 1981a(a)(2) -- as it did other statutory claims (including other ADA claims) -- demonstrates the absence of an intent to extend compensatory and punitive damages to ADA retaliation claims.   See Alvarado v. Cajun Operating Co., 588 F.3d 1261, 1268-70 (9th Cir. 2009); Kramer v. Banc of Am. Sec., LLC, 355 F.3d 961, 965 (7th Cir. 2004) ("Because claims of retaliation under the ADA (§ 12203) are not listed, compensatory and punitive damages are not available for such claims. Instead, the remedies available for ADA retaliation claims against an employer are limited to the remedies set forth in § 2000e-5(g)(1)."), cert. denied, 542 U.S. 932 (2004); Bowles v. Carolina Cargo, Inc., 100 F. App'x 889, 890 (4th Cir. 2004) (adopting the holding of Kramer without analysis) (unpublished per curiam); Rhoads v. FDIC, 94 F. App'x 187, 188 (4th Cir. 2004) (same) (unpublished per curiam).

The minority view reads § 1981a(a)(2) "in light of [the] context, structure, and related statutory provisions" of the ADA, and concludes that, because "the retaliation provision of the ADA contains no remedy of its own" and relies on the other remedies of the ADA, including the ADA's discrimination remedies, "it was unnecessary for Congress to separately mention retaliation in § 1981[a(a)(2)]" and that it "is fair to assume that the expansive effect of § 1981[a(a)(2)] applies equally to claims under [the ADA's discrimination provision] as it does to

retaliation claims by virtue of the fact that the remedies available for retaliation claims incorporate, and are coextensive with, the remedies available under [the ADA's discrimination provision]." See Edwards v. Brookhaven Sci. Assocs., LLC, 390 F. Supp. 2d 225, 236 (E.D.N.Y. 2005) (citations omitted); Baker v. Windsor Republic Doors, 635 F. Supp. 2d 765, 767-71 & n.3 (W.D. Tenn. 2009) (holding similarly and collecting cases), aff'd on other grounds, 414 F. App'x 764 (6th Cir. 2011).[5]

Olymbec argues that the majority view controls. (ECF No. 32 at 5-8; No. 40 at 2-3.) Chapman argues that the minority view controls. (ECF No. 36 at 8-9.) Chapman relies on the affirmance of Baker to support her argument. (Id.) The court in Baker expressly held "that § 1981a(a)(2) extends compensatory damages to ADA retaliation claims. . . ." 635 F. Supp. 2d at 771. The court reasoned that § 1981a(a)(2) was ambiguous under the doctrine of absurdity, see generally John F. Manning, The Absurdity Doctrine, 116 Harv. L. Rev. 2387 (2003), finding that it would be absurd for Congress to have intended compensatory

_____

[5] No circuit courts have expressly interpreted the relevant statutes the way the minority of district courts have. The Second, Eighth, and Tenth Circuits have affirmed compensatory and punitive damage awards for ADA retaliation claims. Those decisions addressed only whether there was sufficient evidence to award damages and did not discuss the relevant issue here. See, e.g., Salitros v. Chrysler Corp., 306 F.3d 562, 575 (8th Cir. 2002) (punitive damages); Foster v. Time Warner Entm't Co., 250 F.3d 1189, 1196-98 (8th Cir. 2001); Muller v. Costello, 187 F.3d 298, 314 (2d Cir. 1999); EEOC v. Wal-Mart Stores, Inc., 187 F.3d 1241, 1244-45 (10th Cir. 1999).

14

damages to be available for ADA intentional discrimination claims brought under § 12112, but not for ADA retaliation claims brought under § 12203, "considering that [both § 12112 and § 12203] codify identical causes of action for retaliation." 635 F. Supp. 2d at 771.

Baker relied on the Supreme Court's decision in Gomez-Perez v. Potter, 553 U.S. 474 (2008), which held that "[the Age Discrimination in Employment Act's ("ADEA")] federal-sector provision's prohibition of 'discrimination based on age' [] likewise proscrib[ed] retaliation." See Baker, 635 F. Supp. 2d at 769-70 (quoting Gomez-Perez, 553 U.S. at 481). Baker relied on Gomez-Perez for the implicit proposition that, "unless a statute states otherwise, prohibitions against intentional discrimination are meant to include retaliation claims." See id. at 771 (citing Gomez-Perez, 553 U.S. at 481). Baker applied that proposition and held that compensatory damages were available for ADA retaliation claims. 635 F. Supp. 2d at 771. On appeal, this Circuit affirmed the district court, but expressly declined to address whether the ADA proscribes compensatory damages because the jury's decision to award compensatory damages could be upheld under the relevant Tennessee statute. Baker, 414 F. App'x at 779-80.

Baker is unpersuasive. Broad use of the absurdity doctrine has been trenchantly criticized. See Laura R. Dove, Absurdity

15

in Disguise: How Courts Create Statutory Ambiguity to Conceal Their Application of the Absurdity Doctrine, 19 Nev. L.J. 741, 754 (2019).  For the reasons articulated by the Ninth Circuit in Alvarado, the Court also finds Baker's reliance on Gomez-Perez misplaced.  See Alvarado, 588 F.3d at 1269.

The Court agrees with the majority line of cases.  The text of § 1981a(a)(2) is not ambiguous.  It explicitly states the specific provisions of the ADA for which compensatory and punitive damages are available (i.e., 42 U.S.C. §§ 12112 and 12112(b)(5)).  42 U.S.C. § 1981a(a)(2).  It does not reference 42 U.S.C. § 12203.  Expressio unius est exclusio alterius. "[W]hen legislation expressly provides a particular remedy or remedies, courts should not expand the coverage of the statute to subsume other remedies."  Nat'l R.R. Passenger Corp. v. Nat'l Ass'n of R.R. Passengers, 414 U.S. 453, 458 (1974).  Although perhaps an "oversight" by Congress, Infantolino v. Joint Industry Board of Electrical Industry, 582 F. Supp. 2d 351, 362-63 (E.D.N.Y. 2008), and although "little apparent logic underlies a rule precluding an award of compensatory and punitive damages in ADA retaliation cases where such damages are available in Title VII retaliation cases [and ADA discrimination cases], the Court's analysis is confined to the statutory language, and any alteration of the rule must come from Congress."  EEOC v. Faurecia Exhaust Sys., Inc., 601 F. Supp. 2d

16

971, 976 (N.D. Ohio 2008) (citing Sink v. Wal-Mart Stores, Inc., 147 F. Supp. 2d 1085, 1101 (D. Kan. 2001)).

The reasoning of the majority of courts that have addressed this issue is persuasive. See, e.g., Alvarado, 588 F.3d at 1268-70; Kramer, 355 F.3d at 965. The Court adopts their reasoning as its own. Chapman is not entitled to compensatory and punitive damages for her ADA retaliation claim. She is not entitled to a jury trial on that claim. Osborn v. Griffin, 865 F.3d 417, 460 (6th Cir. 2017) (no right to jury trial where the only relief sought is "equitable in nature"). Olymbec's Motion for Partial Summary Judgment on this issue is GRANTED.

## C. Statutory Cap for ADA Discrimination Claim

Chapman seeks, inter alia, more than $300,000 in compensatory and punitive damages for her claims. (ECF No. 8 at 5 ¶ 3(g).) Olymbec asks this Court to determine as a matter of law that the amount of compensatory and punitive damages for Chapman's ADA discrimination claim is statutorily capped at $50,000 because Olymbec employed fewer than 100 employees during the relevant time. (ECF No. 32 at 8-9) (citing 42 U.S.C. § 1981a[(b)](3)(A)). Chapman argues that there is a genuine dispute of material fact about the number of Olymbec employees, which precludes summary judgment. (ECF No. 36 at 10.) Alternatively, Chapman argues that the "integrated enterprise

doctrine" supports a finding that Olymbec employs between 201 and 500 employees, raising the statutory cap to $200,000. (See id. at 10-11); 42 U.S.C. 1981a(b)(3)(C). As a further alternative, Chapman asks the Court to grant additional discovery on this issue under Federal Rule of Civil Procedure 56(d). (ECF No. 36 at 11.)

Forty-two U.S.C. § 1981a(b)(3) caps the amount of compensatory and punitive damages a plaintiff can receive for discrimination claims brought under the ADA. Szeinbach v. Ohio State Univ., 820 F.3d 814, 820 (6th Cir. 2016). The cap is determined by "a sliding scale that varies with" the number of employees the employer employed during the period in which the discrimination took place. Hall v. Consol. Freightways Corp. of Delaware, 337 F.3d 669, 676 (6th Cir. 2003). For employers who have "more than 14 and fewer than 101 employees" the cap is $50,000. 42 U.S.C. § 1981a(b)(3)(A). For employers who have "more than 100 and fewer than 201 employees" the cap is $100,000. Id. at § 1981a(b)(3)(B). For employers who have "more than 200 and fewer than 501 employees" the cap is $200,000. Id. at § 1981a(b)(3)(C). The defendant bears the initial burden of proving the number of employees. Sommers-Wilson v. Samsung SDI Am., Inc., 2019 WL 1556343, at *1 (E.D. Mich. Apr. 10, 2019) (citing Herring v. SCI Tenn. Funeral Servs., LLC, 2018 WL 2399050, at *6 (E.D. Tenn. May 24, 2018)).

18

If the defendant satisfies its burden, the burden shifts to the plaintiff to refute the defendant's proof or "prove that the number of employees should also include the employees at some other entity." Id. (citing Shipley v. Hypercom Corp., 2012 WL 12872905, at *8 n.15 (N.D. Ga. Apr. 10, 2012) (collecting cases)).

A decision on this issue would be premature. Motions to apply § 1981a(b)(3)'s statutory cap to jury verdicts are normally brought and decided by courts at the post-trial stage as motions for remittitur and/or motions for alteration of judgment. See, e.g., Sommers-Wilson, 2019 WL 1556343, at *1; Williams v. Sims Bros., 889 F. Supp. 2d 1007, 1007 (N.D. Ohio 2012); Quinn v. Pipe & Piling Supplies (U.S.A.) Ltd., 2011 WL 2470063, at *1 (W.D. Mich. June 20, 2011); Hamlin v. Charter Twp. of Flint, 965 F. Supp. 984, 988 (E.D. Mich. 1997); see also Parrish v. Sollecito, 280 F. Supp. 2d 145, 155 (S.D.N.Y. 2003) ("[O]nly after a verdict is submitted, the trial court must ensure that any award complies with the relevant statutory maximums applicable.") (citing Luciano v. The Olsten Corp., 110 F.3d 210, 221 (2d Cir. 1997)); 2 Americans with Disabilities Practice & Compliance Manual § 7:437 ("The jury may award whatever amount of damages it sees fit, and then, after the verdict is submitted, the trial court must ensure that any award

complies with the relevant statutory maximums applicable, reducing the award if necessary.").

"'A court, in its discretion in shaping the case for trial, may deny summary judgment as to portions of the case that are ripe therefor, for the purpose of achieving a more orderly or expeditious handling of the entire litigation.'" Jacob v. Killian, 437 F. App'x 460, 467 (6th Cir. 2011) (quoting Powell v. Radkins, 506 F.2d 763, 765 (5th Cir. 1975) (citation omitted)). Because Olymbec's liability and the amount of compensatory and punitive damages, if any, have yet to be determined, deciding this issue post-judgment would achieve a "more orderly" resolution. See Jacob, 437 F. App'x at 467. Olymbec's Motion for Partial Summary Judgment on this issue is DENIED.

Chapman asks the Court to allow her to conduct further discovery under Rule 56(d). (ECF No. 36 at 11.) She submits by affidavit that the "specific reasons" she "cannot present facts essential to justify opposition" is because "to date, [Olymbec] has not provided any discovery or documents related to its number of employees or interrelated nature of its business operations with [Olymbec Global,] and "[p]ursuant to [Olymbec's] Initial Disclosures, no documents or information related to the amount of employees Olymbec was claiming were provided to me as a party." Fed. R. Civ. P. 56(d); (ECF No. 38-6 ¶¶ 7, 8.)

Olymbec responds that it raised the statutory cap in its Answer as an affirmative defense, (ECF No. 29 at 6), and Chapman "chose not to conduct any discovery on th[e] issue." (ECF No. 40 at 5 n.3.)

The deadline for discovery in this case was November 22, 2019. (ECF No. 26.) Before that deadline, the parties took depositions of Chapman and Berger. (ECF Nos. 39-1, 39-2.) During her deposition, Berger was specifically asked about the structure of Olymbec USA, its relationship to Olymbec Global, and the number of employees the Memphis office of Olymbec USA employed. (ECF No. 39-1 at 10:8-11:10; 104:12-105:9.) Chapman had ample opportunity to discover evidence about her integrated enterprise theory and the number of employees that Olymbec USA employed. (See id.) Chapman has not shown good cause for extending discovery. See York v. Tenn. Crushed Stone Ass'n, 684 F.2d 360, 363 (6th Cir. 1982). Chapman's request for additional discovery is DENIED.

## V. Conclusion

For the foregoing reasons, Olymbec's Motion for Partial Summary Judgment is DENIED in part and GRANTED in part.

So ordered this 23rd day of April, 2020.

/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE