IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF TENNESSEE
WESTERN DIVISION

| | |
|---|---|
| AMBER CHAPMAN, ) | |
| ) | |
| Plaintiff, ) | |
| ) | |
| ) | |
| v. ) | No. 18-cv-2842 |
| ) | |
| OLYMBEC USA, LLC, ) | |
| ) | |
| Defendant. ) | |
| ) | |

## ORDER DENYING MOTION FOR PARTIAL SUMMARY JUDGMENT

Plaintiff Amber Chapman brings this action for disability discrimination and retaliation against Defendant Olymbec USA, LLC ("Olymbec"). (ECF No. 8.) Before the Court is Olymbec's October 14, 2022 Motion for Partial Summary Judgment. (ECF No. 112.) Plaintiff responded on November 14, 2022, and Defendant replied on November 18, 2022. (ECF Nos. 119, 126.) For the following reasons, the Motion is DENIED.

## I.  Background

Olymbec is a property management company that owns and manages a portfolio of industrial, office, retail, and residential properties. (ECF No. 8 at ¶ 6; No. 29 at ¶ 6.) In August 2016, Olymbec hired Plaintiff to work as a dispatch coordinator. (ECF No. 120 at ¶ 1.) In July 2017, Plaintiff was promoted to administrative assistant. (Id. at ¶ 2.) At various

times, Plaintiff worked under the supervision of Jordana Berger and Jenny Cupp. (ECF No. 119-3, Pl. Decl. ¶¶ 1-7.) Early on, Plaintiff received positive reviews of her work and was called an "amazing employee" who was "doing a great job." (ECF No. 119-1.) Later, however, Olymbec began to find fault with Plaintiff's workplace conduct. The nature and details of the disciplinary incidents that arose are disputed by the parties.

According to Olymbec, during the week of June 26, 2017, Plaintiff accessed confidential information about her coworkers, including salary data, and disclosed that information to other employees. (ECF No. 112-1 at PageID 1314.) Plaintiff was issued a formal, written reprimand. (ECF No. 119-12.) Plaintiff does not directly dispute that she accessed her coworkers' salary information, but argues that she should not have been disciplined because she was authorized to access employee files and because discussion of salary information is protected by law. (ECF No. 119 at PageID 2053-54.)

Olymbec alleges that Plaintiff was insubordinate on January 15 and 22, 2018, by balking at or refusing to complete assigned tasks. (ECF No. 112-1 at PageID 1315.) In one instance, Olymbec says, Plaintiff responded to being assigned a task by saying "I do not want to do that." (ECF No. 119-4 at 1-2.) Berger allegedly orally admonished Plaintiff but did not issue a written reprimand at that time. (ECF No. 115-1, Berger Dep. 53:6-22.)

Plaintiff disputes that she actually refused any task or that she was given any oral admonition on January 15 or 22. (ECF No. 119-3, Pl. Decl. ¶¶ 23-24.) Plaintiff instead says that, when given additional tasks then, she said that she could not complete her already assigned tasks and the additional work, statements that were accepted without reproach by her superiors at the time. (Id.)

On January 29, 2018, Plaintiff had a meeting with Berger and Cupp. (ECF No. 120 at ¶¶ 11-12.) Olymbec contends the meeting was disciplinary and that Plaintiff had been overheard earlier that day making negative comments about Cupp. (ECF No. 115-1, Berger Dep. 57:4-15; No. 119-4 at 2.) Because the meeting was held late in the afternoon, Olymbec says the discussion was not finished by the close of business and Plaintiff was told she would receive a written reprimand the next day. (ECF No. 115-1, Berger Dep. 36:1-19.)

Plaintiff tells a different story. According to Plaintiff, the meeting on January 29, 2018, was not disciplinary and instead focused on Plaintiff's heavy workload. (ECF No. 119-3, Pl. Decl. ¶¶ 13-14.) Berger and Cupp observed that Plaintiff had lately been upset and unhappy in the workplace and offered to modify Plaintiff's duties to allow her to continue working at the company without being overwhelmed. (Id.) At the conclusion of the January 29 meeting, Plaintiff says she was not told about

3

and did not expect to receive any disciplinary action. (Id. at ¶ 17.)

The evening of January 29, at 9:49 PM, Plaintiff sent an email to Berger with the subject line "A Piece to the Puzzle." (ECF No. 119-6.) The email disclosed that Plaintiff had been struggling with depression and had been diagnosed with bipolar disorder. (Id.) In her message, Plaintiff said that part of the reason she might have seemed unhappy or upset in the workplace was that her regimen of mental health medications had recently been modified. (Id.) According to Plaintiff, after she sent this email, "everything changed." (ECF No. 119-3, Pl. Decl. ¶ 18.) When Plaintiff visited Berger the next day, Berger became hostile and issued Plaintiff a written reprimand recharacterizing the supposedly anodyne workload issues from January 15 and 22 as acts of insubordination. (Id. at ¶¶ 22-24.) Addressing the allegation that Plaintiff made negative statements about Cupp on January 29, Plaintiff says that Berger simply "made this up" from whole cloth. (Id. at ¶ 25.)

Later that week, on February 1, 2018, Plaintiff asked to leave work early, and her request was approved by Berger. (ECF No. 41 ¶¶ 16, 18.) The parties dispute what justification Plaintiff gave when she asked for permission for an early departure. Plaintiff contends that she asked to leave to pick up her kids and run some "personal errands." (Id. at ¶ 16.) Olymbec

says that Plaintiff, in asking to leave, said that there was a medical emergency concerning Plaintiff's father-in-law and that no one was available to pick her children up from the school bus at 2:45 PM. (Id.)

It is not disputed that Plaintiff left work around 2:15 PM and went to the Memphis office of the Equal Employment Opportunity Commission ("EEOC") to file a charge of discrimination against Olymbec. (Id. at ¶¶ 20-21.) The EEOC's Memphis office is located at 1407 Union Avenue, a property managed by Olymbec. (Id. at ¶¶ 21-22.) While there, Plaintiff ran into a coworker, Shirley Mason. (Id. at ¶ 23.) After talking with Plaintiff, Mason sent an email to Berger in which Mason said her conversation with Plaintiff "left [Mason] with [the] impression [Plaintiff] was visiting [the] EEOC which is on the 9th floor." (Id. at ¶¶ 26-27; ECF No. 119-9.)

The next day, February 2, 2018, Olymbec, through Berger, fired Plaintiff. (ECF No. 41 ¶¶ 29-30.) The parties dispute the reason for the termination. Plaintiff contends that Berger's exact words were "you breached my trust for going to the EEOC at 1407 Union and for filing a discrimination charge." (ECF No. 114-1, Pl. Dep. 108:24-109:4.) Olymbec contends that Berger terminated Plaintiff for being dishonest and breaching Berger's trust. (ECF No. 41 ¶ 28.)

On December 7, 2018, Plaintiff brought claims against Olymbec for disability discrimination and retaliation under the Americans with Disabilities Act ("ADA"), 42 U.S.C. §§ 12101-12117, and the Tennessee Disability Act ("TDA"), Tenn. Code Ann. §§ 8-50-103 — 104. (ECF No. 1.) Plaintiff filed her First Amended Complaint on February 20, 2019. (ECF No. 8.) Olymbec answered on November 12, 2019. (ECF No. 29.) Olymbec now moves for summary judgment on Plaintiff's claims for disability discrimination, contending, among other arguments, that Plaintiff cannot establish a prima facie case of discrimination.[1] (ECF No. 112-1 at PageID 1303-04.)

## II. Jurisdiction and Choice of Law

The Court has federal question jurisdiction. Under 28 U.S.C. § 1331, district courts have original jurisdiction "of all civil actions arising under the Constitution, laws, or treaties of the United States." Because the ADA is a federal statute, Plaintiff's ADA claims arise under the laws of the United States. (See ECF No. 8 at 5.)

Plaintiff's TDA claims, although arising under state rather than federal law, derive from a "common nucleus of operative fact" with Plaintiff's ADA claims. United Mine Workers of Am. v.

---

[1] Olymbec does not move for summary judgment on Plaintiff's retaliation claims, ECF No. 112-1 at PageID 1316 n.7, and the Court will not address them.

Gibbs, 383 U.S. 715, 725 (1966); see also Soehnlen v. Fleet Owners Ins. Fund, 844 F.3d 576, 588 (6th Cir. 2016). The Court has supplemental jurisdiction over the TDA claim. See 28 U.S.C. § 1367(a).

State substantive law applies to state law claims brought in federal court. Erie R.R. Co. v. Tompkins, 304 U.S. 64, 78 (1938). Where, as here, there is no dispute that a certain state's substantive law applies, the court will not conduct a choice of law analysis sua sponte. See GBJ Corp. v. E. Ohio Paving Co., 139 F.3d 1080, 1085 (6th Cir. 1998). The parties agree in their respective motions and memoranda that Tennessee substantive law applies to Plaintiff's TDA claims and ground their arguments accordingly. (ECF No. 112-1 at PageID 1306; No. 119 at PageID 2056.) The Court will apply Tennessee substantive law to Plaintiff's TDA claims.

**III. Standard of Review**

Under Federal Rule of Civil Procedure 56, a court must grant a motion for summary judgment "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." The moving party can meet this burden by showing that the nonmoving party, having had sufficient opportunity for discovery, lacks evidence to support an essential element of her case. Fed. R. Civ. P. 56(c)(1); Peeples v. City of Detroit, 891 F.3d 622, 630 (6th Cir. 2018).

When confronted with a properly supported motion for summary judgment, the nonmoving party must set forth specific facts showing that there is a genuine dispute for trial. See Fed. R. Civ. P. 56(c). "A 'genuine' dispute exists when the plaintiff presents 'significant probative evidence' 'on which a reasonable jury could return a verdict for her.'" EEOC v. Ford Motor Co., 782 F.3d 753, 760 (6th Cir. 2015) (en banc) (quoting Chappell v. City of Cleveland, 585 F.3d 901, 913 (6th Cir. 2009)). The nonmoving party must do more than simply "show that there is some metaphysical doubt as to the material facts." Adcor Indus., Inc. v. Bevcorp, LLC, 252 F. App'x 55, 61 (6th Cir. 2007) (unpublished) (quoting Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 586 (1986)).

The nonmoving party must point to concrete evidence on which a reasonable juror could return a verdict in her favor; a district court will not "wade through and search the entire record for some specific facts that might support the nonmoving party's claim." InterRoyal Corp. v. Sponseller, 889 F.2d 108, 111 (6th Cir. 1989); accord Parker v. Winwood, 938 F.3d 833, 839 (6th Cir. 2019); Fed. R. Civ. P. 56(c)(3).

"In assessing the record to determine whether there is any genuine issue of material fact, the court must resolve all ambiguities and draw all factual inferences in favor of the non-moving party." Wathen v. Gen. Elec. Co., 115 F.3d 400, 403 (6th

Cir. 1997). Courts will not, however, make strained or unreasonable inferences. Audi AG v. D'Amato, 469 F.3d 534, 545 (6th Cir. 2006).

Although summary judgment must be used carefully, it "is 'an integral part of the Federal Rules as a whole, which are designed to secure the just, speedy, and inexpensive determination of every action' rather than a 'disfavored procedural shortcut.'" FDIC v. Jeff Miller Stables, 573 F.3d 289, 294 (6th Cir. 2009) (quoting Celotex Corp. v. Catrett, 477 U.S. 317, 327 (1986)).

## IV. Analysis

### A. Whether the Motion Should Be Considered on the Merits

Plaintiff argues that the Court should not consider Defendant's Motion on the merits, contending that the issues raised in the Motion should have been advanced in Defendant's earlier motion for partial summary judgment. (ECF No. 119 at PageID 2039; see also ECF No. 31.) However, "district courts may in their discretion permit renewed or successive motions for summary judgment, particularly when the moving party has expanded the factual record on which summary judgment is sought." Lexicon, Inc. v. Safeco Ins. Co. of Am., 436 F.3d 662, 670 n.6 (6th Cir. 2006) (quoting Kovacevich v. Kent State Univ., 224 F.3d 806, 835 (6th Cir. 2000) (Gilman, J., concurring)). After resolving Defendant's original motion for partial summary judgment, the

Court entered a Fifth Amended Scheduling Order setting a new deadline for dispositive motions on November 16, 2022. (ECF Nos. 46, 109.) Defendant complied with that new deadline. (ECF Nos. 109, 112.) In between filing its first motion for partial summary judgment and the instant Motion, Defendant obtained new discovery, including deposition testimony from Plaintiff's medical and psychological providers. (ECF Nos. 109-111.) Given that new information, as well as the uncertainty facing Defendant as to what its discovery would reveal, it was not unreasonable for Olymbec to bring a successive summary judgment motion. The Court will consider Olymbec's arguments on the merits.

### B. Appropriate Framework for ADA Discrimination Claim

A claim of discrimination under the ADA may be established by direct or indirect evidence. Ferrari v. Ford Motor Co., 826 F.3d 885, 891 (6th Cir. 2016). "'Direct evidence is evidence that proves the existence of a fact without requiring any inferences' to be drawn." Pelcha v. MW Bancorp, Inc., 988 F.3d 318, 324 (6th Cir. 2021) (quoting Rowan v. Lockheed Martin Energy Sys., Inc., 360 F.3d 544, 548 (6th Cir. 2004)). "In other words, direct evidence is 'smoking gun' evidence that 'explains itself.'" Id. (quoting Gohl v. Livonia Pub. Schs. Sch. Dist., 836 F.3d 672, 683 (6th Cir. 2016)); see also Jacklyn v. Schering-Plough Healthcare Prods. Sales Corp., 176 F.3d 921, 926 (6th Cir. 1999) (defining direct evidence as "that evidence which, if

10

believed, requires the conclusion that unlawful discrimination was at least a motivating factor in the employer's actions").

A plaintiff seeking to make out a claim of ADA discrimination using direct evidence must show that he or she "(1) is disabled, (2) [is] otherwise qualified to perform the essential functions of the position, with or without accommodation, and (3) suffered an adverse employment action because of his or her disability." Ferrari, 826 F.3d at 891. Because direct evidence is, by definition, aimed at showing that an adverse action is motivated by discriminatory animus, a plaintiff attempting to show discrimination by direct evidence must adduce the direct evidence itself plus evidence that he or she is disabled and qualified for the position. See id.

To the extent Plaintiff seeks to recover based on indirect evidence, the parties agree that her claim of ADA discrimination must proceed under the procedures established by McDonnell Douglas Corp. v. Green, 411 U.S. 792 (1973). (ECF No. 112-1 at PageID 1304-05; No. 119 at PageID 2055, 2059.) Under the McDonnell Douglas burden-shifting framework, a plaintiff must first make a prima facie case of discrimination. Ferrari, 826 F.3d at 891. The burden then shifts to the employer to articulate a legitimate, nondiscriminatory reason for the adverse action taken against the employee. Id. at 892. If the employer does so,

the plaintiff must put forward evidence that the employer's proffered reason is a pretext for unlawful discrimination. Id.

Although the parties agree that McDonnell Douglas applies, they disagree about what is required to establish a prima facie case. (ECF No. 119 at PageID 2056-58; No. 126 at 3-4.) Olymbec cites the five-part test in Whitfield v. Tennessee, 639 F.3d 253, 258-59 (6th Cir. 2011). In Whitfield, the court held that a plaintiff makes a prima facie case of ADA discrimination by showing that:

> 1) he or she is disabled; 2) otherwise qualified for the position, with or without reasonable accommodation; 3) suffered an adverse employment decision; 4) the employer knew or had reason to know of the plaintiff's disability; and 5) the position remained open while the employer sought other applicants or the disabled individual was replaced.

Id. at 259 (quoting Macy v. Hopkins Cnty. Sch. Bd. of Educ., 484 F.3d 357, 365 (6th Cir. 2007)).

Plaintiff disagrees and cites a three-part test used, among other cases, in Demyanovich v. Cadon Plating & Coatings, LLC, 747 F.3d 419, 433 (6th Cir. 2014). (See ECF No. 119 at PageID 2056-58.) Demyanovich holds that a plaintiff need only show that "(1) he is disabled, (2) he is otherwise qualified to perform the essential functions of a position, with or without accommodation, and (3) he suffered an adverse employment action because of his disability." 747 F.3d at 433. Both prima facie tests find support in multiple Sixth Circuit opinions, including

published decisions. See Ferrari, 826 F.3d at 894-95 (citing cases on both sides of the issue).

Despite a degree of conflict in the pertinent caselaw, the Sixth Circuit has resolved the question. In Whitfield, the circuit court acknowledged that "[t]here has been some confusion in this circuit as to the proper test for establishing a prima facie case of employment discrimination under the ADA" and held that the five-factor test was the correct legal framework. 639 F.3d at 259. The court found that the five-factor test was established in Monette v. Electronic Data Systems Corp., 90 F.3d 1173, 1185 (6th Cir. 1996), which predated cases adopting the three-factor test.[2] Whitfield, 639 F.3d at 259. In a later decision, the circuit reiterated that, although in "some cases . . . we have continued to cite the line of authority we rejected in Whitfield," those cases "rely on [a] misreading of our published precedent." Ferrari, 826 F.3d at 894-95. The three-factor cases "should not be cited for the prima facie test under the indirect method," and the "five-element test previously articulated in Monette remains the proper test."[3] Id. at 895.

_____

[2] When two precedential Sixth Circuit panel decisions directly conflict, the earlier case controls, because a later panel cannot overrule a prior panel. United States v. Lee, 793 F.3d 680, 684 (6th Cir. 2015).

[3] The cases cited by Plaintiff in support of the three-factor test either predate Ferrari's emphatic statement that the five-factor test is correct, or cite the three-factor test without acknowledging the conflicting caselaw. ECF No. 119 at PageID 2057-58; see Darby v.

The five-element prima facie test from Whitfield and Monette is the correct test.

### C. ADA Discrimination Claim

Plaintiff argues that her ADA discrimination claim is supported by both direct and indirect evidence. (ECF No. 119 at PageID 2055.) Because her indirect evidence is sufficient to allow her claim to proceed to trial, the Court need not address Plaintiff's purported direct evidence.

Defendant does not dispute, in its Motion, that Plaintiff is disabled, was qualified for her position, suffered an adverse employment action when she was fired, or that Olymbec knew of Plaintiff's disability at the time she was fired. (ECF No. 112-1 at PageID 1306-07.) The only prong of the five-factor prima facie test in dispute is whether "the position remained open while the employer sought other applicants or the disabled individual was replaced." Whitfield, 639 F.3d at 259 (quoting Macy, 484 F.3d at 365).

Defendant contends that Plaintiff cannot establish a prima facie case because she cannot show her position was kept open or filled with someone new. Olymbec points to evidence that, rather than hiring a replacement or keeping Plaintiff's position open, it redistributed her duties to other employees. (ECF No. 112-1

---

Childvine, Inc., 964 F.3d 440, 444-45 (6th Cir. 2020) (articulating three-factor test without mention of Whitfield or Ferrari).

at PageID 1316; No. 113-5 at 7-8.) Defendant cites cases for the proposition that "an employee's assumption of a terminated co-worker's job duties does not constitute replacement" for purposes of establishing a prima facie case. Blizzard v. Marion Tech. Coll., 698 F.3d 275, 283-84 (6th Cir. 2012) (holding in the ADEA context); see also Leavy v. FedEx Corp., No. 19-cv-2705-JTF-tmp, 2021 U.S. Dist. LEXIS 159856, at *19-21 (W.D. Tenn. Feb. 18, 2021) (similar holding in ADA context), report and recommendation adopted by 2021 U.S. Dist. LEXIS 158724 (W.D. Tenn. Aug. 23, 2021).

Plaintiff does not attempt to contradict Defendant's cited authority. (See ECF No. 119 at PageID 2056-58, 2058 n.7.) She does not attempt to rebut Olymbec's factual contention that her duties were distributed among other Olymbec employees. (ECF No. 120 at ¶ 26.) Instead, Plaintiff seeks to evade the requirement that she was replaced or that her job was kept open. Plaintiff cites the Sixth Circuit's statement that a "plaintiff's failure to show that [the employer] attempted to fill [her] vacated position is not fatal if [she] can establish other evidence raising an inference of disparate treatment." Shah v. Gen. Elec. Co., 816 F.2d 264, 270 (6th Cir. 1987). Shah, however, suggested that that "other evidence" would ordinarily take the form of treatment different from a similarly situated employee outside

the protected class -- a problem for Plaintiff, because she does
not have evidence about a similarly situated employee. Id.

Despite her inability to create a genuine issue of material
fact about whether she was replaced or whether a similarly
situated individual was treated differently, Plaintiff can
establish a prima facie case. In Lindsay v. Yates, 578 F.3d 407,
415 (6th Cir. 2009), the court faced a similar situation in which
the plaintiffs, in a Fair Housing Act race discrimination case,
were required to show that housing remained available after their
application was rejected to establish a prima facie case of
housing discrimination. Although plaintiffs could neither show
that the housing remained available nor point to a similarly
situated comparator, the Sixth Circuit reversed the district
court's grant of summary judgment. Id. at 416.

The Yates court emphasized that "the prima facie standard
offered in McDonnell Douglas [is] not 'inflexible' and that the
specific proof required of the plaintiff in that particular case
[is] 'not necessarily applicable in every respect in differing
factual situations.'" Id. (quoting Tex. Dep't of Cmty. Affs. v.
Burdine, 450 U.S. 248, 253 n.6 (1981)). The "key question," for
the Yates court, was "whether the plaintiffs have 'presented
sufficient evidence to permit a reasonable jury to conclude
[they] suffered' an adverse housing action 'under circumstances
giving rise to an inference of unlawful discrimination,' not

16

whether the prima facie elements specifically articulated in McDonnell Douglas . . . could be established." Id. (alteration in original) (quoting Blair v. Henry Filters, Inc., 505 F.3d 517, 529 (6th Cir. 2007)). The court found that, "so long as 'additional evidence' exists . . . that indicates discriminatory intent in 'light of common experience,' the required 'inference of discrimination' can be made in satisfaction of the prima facie case." Id. at 418 (quoting Shah, 816 F.2d at 268-69). "This holds true even if the plaintiff is not necessarily able to identify similarly-situated individuals outside of the relevant protected group who were treated more favorably." Id. District courts have applied this principle of flexibility to the prima facie inquiry in various contexts. See Jefferson v. Intelligrated, Inc., No. 1:18-cv-894, 2021 U.S. Dist. LEXIS 176066, at *15-18 (S.D. Ohio Sept. 16, 2021) (Title VII race discrimination); Edelstein v. Stephens, No. 1:17-cv-305, 2019 U.S. Dist. LEXIS 131661, at *90-92 (S.D. Ohio Aug. 5, 2019) (religious discrimination under Equal Protection Clause), report and recommendation adopted by 2020 U.S. Dist. LEXIS 64180 (S.D. Ohio Apr. 13, 2020); Jamaleddin v. Oakland Physicians Med. Ctr., No. 13-cv-12735, 2015 U.S. Dist. LEXIS 2874, at *14-18 (E.D. Mich. Jan. 12, 2015) (national origin discrimination under Title VII and Michigan state law).

Under these precedents, Plaintiff can establish a prima facie case although she presents no evidence that her position

remained open or that there is a similarly situated comparator. Plaintiff has provided "additional evidence" that her termination took place "under circumstances giving rise to an inference of unlawful discrimination." Yates, 578 F.3d at 416. Specifically, Plaintiff points to the temporal proximity of the disclosure of her disability to her termination and -- of particular importance -- the alleged outright lies used by her employer to justify its discipline. (See ECF No. 119 at PageID 2057-58.)

The parties agree that Plaintiff's firing took place within days of her disclosure of her disability.[4] (ECF No. 112-1 at PageID 1310, 1317-19; No. 119 at PageID 2056-57.) In Yates, the Sixth Circuit stated that "suspicious timing" may allow an inference of discriminatory motive. 578 F.3d at 418-20 (finding that two-day lapse between sellers' discovery that buyers were African-American and cancellation of sale created inference of discrimination). Although there is no specific "ceiling on the period of time that a court will consider sufficient to show temporal proximity," courts in retaliation cases have decided that significantly longer time periods can establish a causal relationship for purposes of a prima facie case. Savage v. Fed.

---

[4] Plaintiff sent her email notifying Olymbec of her depression and bipolar disorder shortly before 10 PM on January 29, 2018. (ECF No. 119-6.) She was fired on February 2, 2018. (ECF No. 114-1, Pl. Dep. 107:7-110:21.)

Express Corp., 856 F.3d 440, 448-49 (6th Cir. 2017) (period of forty-one days between protected activity and termination triggered causal inference); see also Hubbell v. FedEx Smartpost, Inc., 933 F.3d 558, 570 (6th Cir. 2019) (multiple disciplinary writeups within two months of protected activity, including one within four days); Dixon v. Gonzales, 481 F.3d 324, 334 (6th Cir. 2007) ("[T]his Court has typically found the causal connection element satisfied only where the adverse employment action occurred within a matter of months, or less, of the protected activity."). That Plaintiff's firing occurred only four days or so after she disclosed her disability creates an inference of discrimination.

Olymbec's alleged fabrications provide particularly strong support for an inference of discrimination. According to Plaintiff's sworn declaration, her January 29, 2018 meeting with Berger and Cupp was not disciplinary. (ECF No. 119-3, Pl. Decl. ¶¶ 13-14, 17.) The purpose of the meeting, says Plaintiff, was solely to discuss her workload and how that workload might be adjusted to allow Plaintiff to fulfill her duties successfully. (Id. at ¶¶ 13-14.) After Plaintiff sent an email to Berger on the evening of the 29th disclosing her depression and bipolar disorder, "everything changed." (Id. at ¶¶ 15-18.) In an unscheduled meeting on the morning of January 30, Berger became hostile and told Plaintiff she was going to be issued a formal,

written reprimand. (Id. at ¶¶ 20-21.) In addition to recharacterizing earlier, harmless incidents as insubordination, the reprimand (according to Plaintiff) manufactured an entirely false allegation that Plaintiff had said Cupp "exaggerates things and expects things too quickly." (Id. at ¶¶ 22-25.) That comment, says Plaintiff, was never discussed at the January 29th meeting and was raised only after Plaintiff had disclosed her disability. (Id. at ¶ 25.)

Although Olymbec strongly disputes the factual assertions in the foregoing narrative, Plaintiff's statements must be taken as true for the purposes of a motion for summary judgment.[5] See Rorrer v. City of Stow, 743 F.3d 1025, 1038 (6th Cir. 2014). If believed, the allegation that Defendant concocted an entirely false charge of wrongdoing against Plaintiff mere hours after disclosure of her disability creates a strong inference of discrimination.[6] Plaintiff has made a prima facie case of ADA

---

[5] Defendant argues that an audio recording of a meeting among Berger, Cupp, and Plaintiff undermines Plaintiff's narrative. (ECF No. 126 at 5-6.) Among other portions of the recording with potential evidentiary value, Berger at one point asserts to Plaintiff that Plaintiff's negativity had been discussed in the initial, January 29, 2018 meeting. (ECF No. 119-15 at 4:30-5:00.) Nothing in the recording, however, contradicts Plaintiff's story so plainly and irrefutably that a jury could not return a verdict in her favor.

[6] That inference of discrimination is not eliminated by Plaintiff's assertion that, when she was fired, Berger gave as her reason that Plaintiff "breached my trust for going to the EEOC at 1407 Union and for filing a discrimination charge." (ECF No. 114-1, Pl. Dep. 108:20-109:4.) Although Berger's alleged statement points to retaliation, rather than discrimination, as the cause of Plaintiff's firing, the jury could permissibly conclude that both retaliatory and

discrimination because she has created a genuine dispute of material fact about whether she was discharged "under circumstances giving rise to an inference of unlawful discrimination." <u>Yates</u>, 578 F.3d at 416 (quoting <u>Blair</u>, 505 F.3d at 529).

Olymbec has offered a legitimate, nondiscriminatory reason for firing Plaintiff. Olymbec says that it acted based on Plaintiff's record of misconduct, including that Plaintiff went through her coworkers' private personnel files, made negative comments about Cupp, and lied about her reason for leaving work on the day she planned to visit the EEOC. (ECF No. 112-1 at PageID 1316-1319.) Defendant has satisfied its burden of producing a nondiscriminatory reason for firing Plaintiff. <u>See</u> <u>Harper v. City of Cleveland</u>, 781 F. App'x 389, 396 (6th Cir. 2019) (unpublished) (stating that workplace misconduct is a legitimate, nondiscriminatory reason for an adverse action).

Because Olymbec has produced a legitimate reason for its adverse action, the burden shifts to Plaintiff to show that the proffered reason is pretextual. <u>Ferrari</u>, 826 F.3d at 892. "Pretext can be shown by offering evidence that (1) the

---

discriminatory motives underlay Defendant's decision. <u>See</u> <u>Lewis v.</u> <u>Humboldt Acquisition Corp.</u>, 681 F.3d 312, 317-18 (6th Cir. 2012) (en banc) (holding that, in ADA discrimination claim, disability discrimination must be but for cause, but need not be sole cause, of the adverse employment action).

employer's stated reason had no basis in fact, (2) the stated reason did not actually motivate the employer, or (3) the stated reason was insufficient to warrant the adverse employment action." Loyd v. Saint Joseph Mercy Oakland, 766 F.3d 580, 590 (6th Cir. 2014). The plaintiff has no obligation to make an additional showing of discriminatory intent at the pretext stage; it is sufficient to adduce evidence that would allow a reasonable jury to conclude that the employer's explanation is false. Wheat v. Fifth Third Bank, 785 F.3d 230, 240 n.5 (6th Cir. 2015).

Plaintiff has produced clear evidence of pretext. Olymbec justifies its firing in significant part based on Plaintiff's alleged lie -- namely, that Plaintiff needed to leave work early to pick up her children from the school bus, when in reality Plaintiff intended to visit the EEOC. (ECF No. 112-1 at PageID 1321.) Plaintiff asserts, however, that she did not lie, but told Berger instead that she needed to "run errands," meaning visit the EEOC, and "get my kids" without any mention of picking them up from the school bus.[7] (ECF No. 119-4, Pl. Decl. ¶ 33.)

---

[7] Plaintiff states in her summary judgment briefing that her children were old enough at the time to walk home after being dropped off by the school bus. (ECF No. 119 at PageID 2049.) Whether Plaintiff was truthful depends on whether she actually mentioned the school bus and her errand. Olymbec hotly contests the point and submits deposition testimony from Berger, as well as declarations from three other individuals in the room when Plaintiff requested to leave work early, to the effect that Plaintiff did indeed speak of getting her children from the school bus and made no mention of personal errands. (ECF No. 115-1, Berger Decl. 75:15-77:12; Nos. 113-2, 113-3, 113-4.) However, "[a] court reviewing a motion for summary judgment cannot weigh the

If it credited Plaintiff's version of events, a reasonable jury could conclude that Olymbec falsified its reason for firing Plaintiff -- i.e., Plaintiff's alleged lie that she needed to pick up her children from the school bus -- to cover up invidious discrimination. The possibility of pretext is bolstered by the recency of Plaintiff's disclosure of her disability, as well as Olymbec's allegedly false pretenses for disciplining Plaintiff on January 30, 2018. Plaintiff has created a genuine dispute of material fact about whether Olymbec's stated reasons for terminating her employment are pretextual. Defendant is not entitled to judgment as a matter of law on Plaintiff's ADA discrimination claim, and summary judgment on that count is DENIED.

### D. Tennessee Disability Act Claim

The Tennessee Disability Act prohibits discrimination in hiring, firing, and the terms and conditions of employment by "any private employer[] against any applicant for employment based solely upon any physical, mental or visual disability." Tenn. Code Ann. § 8-50-103(b). Defendant relies on this "solely" language to argue that Plaintiff must show that disability was

---

evidence or make credibility determinations." Ohio Citizen Action v. City of Englewood, 671 F.3d 564, 569 (6th Cir. 2012). Evaluating the conflicting evidence is the province of the jury, not the Court.

the sole cause of her firing. (ECF No. 112-1 at PageID 1305.) Plaintiff concedes the point. (ECF No. 119 at PageID 2056.)

The Court, however, is not bound to accept the parties' interpretation. "Parties' mutual agreement about a statute's interpretation does not -- and cannot -- tie the judiciary's hands." United States v. Miller, 34 F.4th 500, 505 (6th Cir. 2022). Although cases are shaped, and to significant extent controlled, by the parties, courts possess independent authority to interpret the law and thus "act[] without any impropriety in refusing to accept what in effect [is] a stipulation on a question of law." U.S. Nat'l Bank of Or. v. Indep. Ins. Agents of Am., Inc., 508 U.S. 439, 448 (1993); see also Neuens v. City of Columbus, 303 F.3d 667, 670 (6th Cir. 2002) (finding that district court erred by accepting parties' stipulation on a legal question); United States v. Wilson, 978 F.3d 990, 996 (6th Cir. 2020) ("We are not bound to accept 'what in effect was a stipulation on a question of law.'" (quoting U.S. Nat'l Bank, 508 U.S. at 448)). The Court must independently examine what the TDA requires to make a showing of discrimination.

The Tennessee Supreme Court has held that "an individual alleging discrimination under the [TDA] must show: (1) that the individual was qualified for the position; (2) that the individual was disabled; and (3) that the individual suffered an adverse employment action because of that disability." Barnes v.

Goodyear Tire & Rubber Co., 48 S.W.3d 698, 705 (Tenn. 2000). The
Supreme Court's use of "because of" rather than "solely because
of" is not a meaningless difference; the Supreme Court has
explicitly adopted a standard of "but for" causation. Id. at 708
("The third element of the analysis further requires a claimant
to establish that a prohibited motivation made a difference in
the adverse employment decision. There are two evidentiary
methods for establishing this 'but for' causation."). This Court
and the Tennessee intermediate appellate courts have recited or
applied the Barnes court's "but for" standard without discussion
of any purported sole causation requirement. Goodbar v.
Technicolor Videocassette of Mich., Inc., No. 09-2553, 2010 U.S.
Dist. LEXIS 137793, at *18 (W.D. Tenn. Dec. 30, 2010); Oates v.
Chattanooga Publ'g Co., 205 S.W.3d 418, 424 (Tenn. Ct. App.
2006); Black v. City of Clarksville, No. M2020-01580-COA-R3-CV,
2022 Tenn. App. LEXIS 9, at *12 (Ct. App. Jan. 13, 2022). The
parties do not cite any cases requiring that disability
discrimination be the sole cause of an adverse employment action
under the TDA, and the Court's own investigation has revealed
none. The proper standard for a TDA discrimination claim is the
"but for" standard articulated in Barnes. See 48 S.W.3d at 705.

Because Olymbec does not dispute that Plaintiff was disabled
and qualified for her position, the only question is whether
Plaintiff "suffered an adverse employment action because of [her]

disability." Id. For the reasons already discussed, Plaintiff has created a genuine dispute of material fact about whether Olymbec dismissed her because of her disability.[8] The temporal proximity of Plaintiff's disclosure of her disability to her firing, as well as Olymbec's alleged fabrication of incidents of wrongdoing by Plaintiff, would allow a reasonable jury -- if it credited Plaintiff's evidence -- to find that Olymbec fired her because of her disability. Summary judgment is DENIED on Plaintiff's TDA discrimination claim.

## V.   Conclusion

For the foregoing reasons, Defendant's Motion for Partial Summary Judgment, ECF No. 112, is DENIED.


SO ORDERED this 7th day of March, 2023.


/s/ *Samuel H. Mays, Jr.*
SAMUEL H. MAYS, JR.
UNITED STATES DISTRICT JUDGE

---

[8] Courts have disagreed about whether the McDonnell Douglas burden-shifting framework is procedural or substantive, and thus on whether it applies to state law discrimination claims under Erie. See Turner v. Marathon Petroleum Co., 804 F. App'x 375, 377 (6th Cir. 2020) (unpublished) (discussing conflicting decisions and declining to resolve issue). Tennessee, however, has codified the McDonnell Douglas framework. Tenn. Code Ann. § 4-21-311(e); Templeton v. Macon Cnty., 576 S.W.3d 691, 697 (Tenn. Ct. App. 2018) (recognizing that statutory language codified McDonnell Douglas). The Court's burden-shifting analysis of Plaintiff's ADA claim applies equally to her TDA claim.